USCA1 Opinion

 

 _________________________ No. 96-1534 UNITED STATES OF AMERICA, Appellee, v. CECILIO F. MCDONALD, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] _________________________ Before Selya, Circuit Judge, Hill,* Senior Circuit Judge, and Boudin, Circuit Judge. _________________________ Robert D. Dimler , by appointment of the court, for appellant. Margaret  E.  Curran, Assistant United States Attorney, with whom Sheldon  Whitehouse, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief, for appellee. _________________________ August 20, 1997 _________________________ _______________ *Of the Eleventh Circuit, sitting by designation. SELYA, Circuit  Judge. In this proceeding, defendant- appellant Cecilio F. McDonald asks in the alternative (1) that we vacate his guilty plea because the district court failed to advise him of the applicable mandatory minimum sentence during the plea colloquy, or (2) that we set aside his sentence due to an alleged error in the calculation of his adjusted offense level. Taking second things first, we find no computational error. And while McDonald's first point is well-taken _ we agree that the district court erred in failing to apprise the appellant of the mandatory minimum sentence,  see Fed. R. Crim. P. 11(c)(1) _ we find that this error was benign. Consequently, we affirm the appellant's conviction and sentence. I. Background On September 18, 1995, the authorities searched the appellant's one-bedroom apartment in Providence, Rhode Island, pursuant to a warrant. They found a cornucopia of drugs, money, and drug-related paraphernalia hidden in the parlor: 160.32 grams of crack cocaine, 2,656.47 grams of marijuana, $16,050 in cash, three digital scales, and two dust masks. They also found a 9mm semi-automatic pistol and a plastic bag containing several live rounds in a secret compartment in the bathroom vanity. A federal grand jury subsequently returned an indictment charging the appellant with possessing fifty grams or more of cocaine base (crack), intending to distribute it, in violation of 21 U.S.C. S 841(a)(1) and (b)(1)(A) (1994). In due course, the 3 appellant pleaded guilty to the charge. During the plea colloquy, the district court questioned him extensively in order to ascertain that his guilty plea was voluntary, knowing, and intelligent. Yet the court neglected to mention that, due to the amount of crack involved, the offense carried a mandatory minimum ten-year sentence. Following standard practice, the district court commissioned the preparation of a Presentence Investigation Report (PSI Report). In it, the probation department reported that the amount of crack involved called for a base offense level (BOL) of 36; recommended a series of adjustments to the BOL; hypothesized that the appellant belonged in criminal history category III; and forecast a guideline sentencing range of 210-262 months. In two places, the PSI Report unambiguously declared that a mandatory minimum sentence of ten years applied. The appellant (who told the court at sentencing that he had been afforded an ample opportunity to read and digest the PSI Report) filed a covey of objections, but he neither took issue with the applicability of the mandatory minimum sentence nor complained that its existence had previously been withheld from him. At the disposition hearing, the district judge determined that the BOL was 34, not 36. He made two adjustments, subtracting three levels for acceptance of responsibility, see USSG S3E1.1 (1995), and adding two levels for possession of a firearm,  see USSG S2D1.1(b)(1) (1995). The court then concluded that the appellant belonged in criminal history category I. These determinations 4 yielded a sentencing range of 135-168 months. See USSG Ch.5, Pt. A (Sentencing Table) (adjusted offense level 33, criminal history category I). The judge thereupon imposed a 135-month incarcerative sentence. This appeal ensued. II. Discussion We begin with the weapons enhancement, cognizant that the propriety vel non of that ruling may affect the harmless error analysis which the appellant's principal assignment of error entails. A. The Weapons Enhancement We review factual determinations made in the course of sentencing for clear error, mindful that such determinations need only be supported by preponderant evidence. See United States v. Lagasse, 87 F.3d 18, 21 (1st Cir. 1996). Moreover, the district court's application of a relevant guideline to the facts of a given case is a fact-sensitive matter that engenders clear-error review. See United  States v. Gonzalez-Vazquez, 34 F.3d 19, 24 (1st Cir. 1994). Under these standards, we must uphold the weapons enhancement in this case. There is no cause to tarry. A firearm is a "dangerous  This is to be distinguished from questions anent the interpretation or overall applicability of particular guidelines to particular situations. Such questions are questions of law and are therefore subject to de novo review. See United States v. Muniz, 49 F.3d 36, 41 (1st Cir. 1995). 5 weapon," and the relevant guideline instructs the sentencing court to increase the BOL by two levels if the defendant possessed "a dangerous weapon." USSG S2D1.1(b)(1). The Sentencing Commission's commentary and application notes weigh heavily in construing the guidelines, see Stinson v. United  States, 508 U.S. 36, 42-46 (1993);  United States v.  Fiore, 983 F.2d 1, 2 (1st Cir. 1992), and, in regard to this guideline, the Commission tells us that "the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG S2D1.1(b)(1), comment. (n.3). We have consistently honored this advisory,  see,  e.g.,  Gonzalez-Vazquez, 34 F.3d at 24; United States v. Jackson, 3 F.3d 506, 509 (1st Cir. 1993); United States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990), and the appellant has offered us no persuasive reason to repudiate it today. Of course, a certain nexus between the weapon and the offense must be shown in order for the enhancement to lie. See Lagasse, 87 F.3d at 22. But to establish the link the prosecution need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so. See id. Furthermore, a defendant need not have had the weapon on his person for the enhancement to apply; any possession _ actual or constructive _ can trigger the two-level increase. See United States v. Hill, 79 F.3d 1477, 1485 (6th Cir. 1996). Thus, "when the weapon's location makes it readily available to protect either 6 the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct." United  States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992);  accord  Lagasse, 87 F.3d at 22;  United States v.  Ovalle- Marquez, 36 F.3d 212, 225 (1st Cir. 1994). Here, the government satisfied its entry-level burden. It showed that the appellant constructively possessed a weapon _ after all, the gun was found in the bathroom vanity of the home that he alone occupied _ and a reasonable factfinder could infer from the apartment's contents that the premises served as the command post for the appellant's drug-trafficking activities. In short, the weapon, though hidden, was readily available to protect the appellant, the cash, and the drugs that he kept on the premises. Where, as here, the government has shown that a firearm possessed by the defendant was present during the commission of the offense, the burden shifts to the defendant to persuade the factfinder that a connection between the weapon and the crime is clearly improbable. See Jackson, 3 F.3d at 509. On this record, we cannot fault the lower court for holding that the appellant failed to carry this burden. To be sure, the appellant denied all knowledge of the gun. But he neither adduced any evidentiary support for this denial nor suggested an innocent explanation for the gun's presence. Credibility calls are for the trier, see, e.g.,  United States v.  St. Cyr , 977 F.2d 698, 706 (1st Cir. 1992), 7 and Judge Pettine was not obliged to credit the appellant's unsupported disclaimer of guilty knowledge. To summarize, we discern no clear error in the court's imposition of a two-level enhancement pursuant to USSG S2D1.1(b)(1). B. The Rule 11 Colloquy We turn now to the appellant's principal claim _ a claim that makes its debut on appeal. In many instances, we will decline to entertain issues that were not seasonably advanced in the nisi prius court. However, a different rule sometimes obtains when a defendant seeks for the first time to set aside his guilty plea in the court of appeals. See, e.g., United  States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991); see generally Fed. R. Crim. P. 32(e). Here, the defendant's allegation implicates a core concern of Rule 11 and the record on appeal is adequately developed to permit direct review. See United States v. Martinez-Martinez, 69 F.3d 1215, 1219 (1st Cir. 1995), cert. denied, 116 S. Ct. 1343 (1996). Hence, we consider the appellant's argument.  When a defendant moves in the district court to withdraw a guilty plea, we usually test that motion by means of a set multi- part analysis. See  United States v.  Gonzalez-Vazquez, 34 F.3d 19, 22-23 (1st Cir. 1994); United  States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994). We have on occasion used this same analytic tool as a guide in cases in which a defendant alleges for the first time on appeal that the district court violated Criminal Rule 11. See, e.g., United  States v. Lopez-Pineda, 55 F.3d 693, 696 (1st Cir. 1995). The multi-part test is not obligatory. Here, where both the trial court's error and the harmlessness of that error are manifest, we need not perform the multi-part test. 8 By entering a guilty plea, a defendant effectively waives a myriad of important constitutional rights. Thus, due process demands that such a plea be made voluntarily, knowingly, intelligently, and with an awareness of the overall circumstances and probable consequences. See Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969). To this end, Rule 11 has a predominantly prophylactic purpose. The main thrust of the rule is to ensure that a defendant who pleads guilty does so with full comprehension of the specific attributes of the charge and the possible consequences of the plea. See United  States v. Lopez-Pineda, 55 F.3d 693, 695 (1st Cir. 1995). In neglecting to apprise the appellant of the mandatory minimum sentence applicable to the offense of conviction, the district court tarnished an otherwise irreproachable plea colloquy and violated Rule 11. See Fed. R. Crim. P. 11(c)(1) (stating, among other things, that "before accepting a plea of guilty . . . the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, . . . the mandatory minimum penalty provided by law"). It follows that the appellant's claim of error is well founded. This determination does not end our inquiry. Not every violation of Rule 11 invalidates a guilty plea, and the Criminal Rules specifically instruct courts to disregard any defect in a Rule 11 proceeding that does not affect the defendant's substantial rights. See Fed. R. Crim. P. 11(h). In other words, even an error implicating Rule 11's core concerns will not require vacating a 9 guilty plea if the error, in context, is harmless. In the case at hand, the error did not impair the appellant's substantial rights. The court imposed a sentence of 135 months _ fifteen months longer than the mandatory minimum _ and calculated that sentence without any reference to the mandatory minimum. It is, therefore, readily apparent that because the guideline sentencing range (at its nadir) outstripped the mandatory minimum, the latter had no relevance to, and no actual effect upon, the appellant's sentence. Consequently, the district court's failure to apprise the appellant of the mandatory minimum was an error that did no discernible harm. See Lopez-Pineda, 55 F.3d at 696; United States v. Johnson, 1 F.3d 296, 303 (5th Cir. 1993). The appellant's fallback position is that, as a result of the court's failure to inform him of the mandatory minimum sentence, he was deprived of the benefit of his bargain. This argument rests on the notion that, without the mandatory minimum, the appellant had a chance to obtain a sentence less than 120 months; and, while this prospect induced him to change his plea, the undisclosed mandatory minimum rendered the prospect illusory. The short answer is that this notion does not comport with the facts: any chance that the appellant had to obtain a sentence of less than 120 months depended, at least in part, on avoiding the two-level upward adjustment for possession of a firearm. Since that enhancement was properly awarded, without any  Indeed, the existence of the mandatory minimum presented the appellant with an opportunity, through the operation of the so- 10 reference to the mandatory minimum, the court's omission could not have affected the appellant's substantial rights. We need go no further. The purpose of insisting that the judge inform a defendant of the existence and potential applicability of a mandatory minimum sentence is to ensure that the defendant is not induced to change his plea because of a totally unrealistic expectation as to how mild a sentence he might receive. That purpose was not in any way frustrated by the omission that occurred here. Since the district court's bevue did not harm or prejudice the appellant in any cognizable way, the appeal founders. Affirmed.  called "safety valve" provision, see 18 U.S.C. S 3553(f) (1994); USSG S5C1.2, to obtain an appreciably lower sentence. In the final analysis, however, the weapons enhancement blocked this avenue too. See USSG S5C1.2(2). We note in passing that the evidence strongly suggests that the appellant, notwithstanding the district court's omission, knew of the mandatory minimum sentence all along. For instance, he confirmed at the disposition hearing that he enjoyed ample opportunity to read the PSI Report and discuss it with his counsel _ and that report states in two places that the offense carries a ten-year mandatory minimum sentence. Furthermore, the possible application of the "safety valve" provision was discussed in open court at the change-of-plea hearing _ and that provision only comes into play where a mandatory minimum sentence is in effect. 11