[NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 97-1176

UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL CABRERA-ROSARIO,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge] 



Before

Selya, Circuit Judge, 

Campbell, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Juan P. Rivera Rom n on brief for appellant. 
Guillermo Gil, United States Attorney, Jos A. Quiles- 
Espinosa, Senior Litigation Counsel, and Aixa Maldonado-Qui ones, 
Assistant United States Attorney, on brief for appellee.



October 17, 1997


SELYA, Circuit Judge. Defendant-appellant Manuel SELYA, Circuit Judge. 

Cabrera-Rosario (Cabrera) invites us to vacate his sentence and

set aside his guilty plea. For the reasons elucidated below, we

decline the invitation.

I. BACKGROUND I. BACKGROUND

A grand jury sitting in the District of Puerto Rico

returned a two-count indictment against the appellant. Count 1

charged that Cabrera, a convicted felon, knowingly received

and/or possessed a number of firearms that had been transported

in commerce in violation of 18 U.S.C. 922(g) and 924(e)

(1994). Count 2 charged him with obliterating the manufacturer's

serial numbers on two of these weapons both Cobray machine guns

in violation of 18 U.S.C. 922(k) & (o) (1994).

The appellant originally pleaded not guilty. On May

28, 1996, he changed course and signed a so-called Plea and

Cooperation Agreement (the Agreement) that set forth the terms

and conditions appertaining to a nonbinding plea bargain. See 

Fed. R. Crim. P. 11(e)(1)(B).

The Agreement each page of which was initialled by

the appellant and his attorney provided, inter alia, that if

Cabrera cooperated fully and truthfully, the government would

stipulate to a particular set of guideline calculations designed

to yield a guideline sentencing range (GSR) of 188 to 235 months

(adjusted offense level 31; criminal history category VI). It

clearly indicated Cabrera's awareness that, notwithstanding the

stipulation, "the defendant's sentence is within the sound

2

discretion of the sentencing judge," Agreement, 6; and that, if

the court were to impose a sentence in excess of 235 months, "the

defendant [could] not, for that reason alone, withdraw [his]

guilty plea," id. The Agreement also implied that the 

government, unless it moved for a downward departure, see USSG 

5K1.1 (1995) a matter left wholly within its discretion 

would recommend that the court impose a sentence within those

parameters.

Cabrera thereupon completed a 13-page Petition to Enter

a Plea of Guilty (the Petition) that reinforced the sentencing

message contained in the Agreement. The Petition included an

extensive questionnaire. In addition to answering the questions,

Cabrera initialled each of the 13 pages, as did his attorney.

A change-of-plea hearing ensued. Judge Casellas told

the appellant the purpose of the proceeding and interrogated him

at some length. The appellant stated unequivocally, in response

to direct questions, that he had read and completed truthfully

all 13 pages; that he had conferred sufficiently with his

counsel; and that he understood that his guilty plea, if

accepted, would effectively waive a long list of constitutional

rights. Judge Casellas then requested the prosecutor to

summarize the terms of the Agreement.1 The court made it crystal
 

1The prosecutor's summary was accurate for the most part,
but he misstated the projected GSR, describing it as 188 to 208
months. Given the express provisions of both the Agreement and
the Petition, and the fact that the appellant and his lawyer
vouchsafed the prosecutor's summary of the Agreement, we attach
no decretory significance to this lapsus linguae. We note, 
moreover, that the presentence investigation report, which both

3

clear that the sentence to be imposed was within its sole

discretion, subject only to the limits set by law, and the

appellant acknowledged that he understood as much.

Judge Casellas then reviewed the allegations of count 1

with the appellant and informed him of the maximum possible

penalty. However, the judge failed to mention that the appellant

could not withdraw his guilty plea if the court decided not to

follow the sentencing recommendation contained in the Agreement.

The district court convened the disposition hearing on

December 3, 1996. At the outset, the appellant's counsel

confirmed that both he and his client had read and reviewed the

presentence investigation report, that the report was "accurate"

and "fair-minded," and that they had no objection to its

contents. In his allocution, the appellant importuned the

court's forgiveness. For its part, the government did little

more than stand by the Agreement and the sentencing calculations

contained therein.

In pronouncing sentence, Judge Casellas in effect

accepted the parties' earlier stipulation, determining that the

applicable GSR was 188 to 235 months. He sentenced the appellant

at the apex of the range, but within it. This appeal ensued.

II. ANALYSIS II. ANALYSIS

The appellant's central thesis is that his guilty plea

was involuntary because he was unaware of its consequences. He
 

the appellant and his attorney read and pronounced "accurate" in
advance of sentencing, tracked the Agreement and the Petition in
describing the GSR as 188 to 235 months.

4

supports this thesis in two ways. First, he claims that the

presiding judge failed to warn him that he could not withdraw his

guilty plea if the judge decided not to adopt the government's

sentencing recommendation. Second, he asseverates that the

government breached the Agreement. We turn first to the question

of appealability and then consider the appellant's arguments.

A. Appealability. A. Appealability. 

Rule 11 exists as a means of safeguarding the fairness,

integrity, and public reputation of judicial proceedings. See 

United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991). 

Among other things, the rule is intended to ensure that a

defendant who pleads guilty does so with an "understanding of the

nature of the charge and the consequences of his plea." McCarthy 

v. United States, 394 U.S. 459, 467 (1969). Because of the 

importance of the interests that Rule 11 protects, we sometimes

will entertain on direct appeal a Rule 11 challenge even though

the essence of the challenge was not raised in the nisi prius

court. See, e.g., United States v. McDonald, 121 F.3d 7, 10 (1st 

Cir. 1997); Parra-Ibanez, 936 F.2d at 593. This is such a case. 

B. The Plea Colloquy. B. The Plea Colloquy. 

Fed. R. Crim. P. 11(e)(2) specifically provides, with

respect to nonbinding plea agreements,2 that "the court shall

 

2The plea agreement at issue here is of this stripe, drawing
its essence from Fed. R. Crim. P. 11(e)(1)(B). In it, the
prosecutor effectively agreed to take a position vis- -vis
sentencing (i.e., not opposing a sentence within the stipulated
GSR), with the understanding that this "recommendation" would not
bind the court.

5

advise the defendant that if the court does not accept the

[sentencing] recommendation or request the defendant nevertheless

has no right to withdraw the plea." In this instance, the

district judge conducted a painstaking Rule 11 colloquy in which

he inquired about the Agreement and reminded the appellant that

the government's sentencing recommendation was not binding on the

court. There was, however, a flaw: the judge never told the

appellant explicitly that he would be unable to withdraw his plea

should the court fail to act in accordance with the agreed

disposition.

Notwithstanding the importance of the prophylaxis that

Rule 11 prescribes, the detection of an error does not

necessarily require vacation of a defendant's plea. The drafters

of Rule 11 made it pellucid that "any variance from the

procedures required by this rule which does not affect

substantial rights shall be disregarded." Fed. R. Crim. P.

11(h). Under this proviso, "even an error implicating Rule 11's

core concerns will not require vacating a guilty plea if the

error, in context, is harmless." McDonald, 121 F.3d at 11. 

Thus, the question before us reduces to the harmlessness vel non 

of the judge's omission.3
 

3When a defendant moves in the district court to withdraw an
earlier guilty plea, we customarily test the district court's
resolution of that motion through a multi-faceted format. See 
United States v. Gonzalez-Vazquez, 34 F.3d 19, 22-23 (1st Cir. 
1994); United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st 
Cir. 1994). We occasionally have utilized this same method of
analysis in cases in which a defendant alleges for the first time
on appeal that the sentencing court violated Rule 11. See, e.g., 
United States v. Lopez-Pineda, 55 F.3d 693, 696 (1st Cir.), cert. 

6

To be sure, due process demands that a plea in a

criminal case "be made voluntarily, knowingly, intelligently, and

with an awareness of the overall circumstances and probable

consequences." Id. (citing Boykin v. Alabama, 395 U.S. 238, 243 

n.5 (1969)). In failing to apprise the appellant of one of the

consequences that would flow from the court's disapproval of the

prosecutor's sentencing recommendation, the district court

blemished an otherwise impeccable plea colloquy, violated Rule

11, and precipitated a due process challenge. Nonetheless, in

the idiosyncratic circumstances of this case, the court's error

did not impair the appellant's substantial rights. We explain

briefly.

In evaluating incipient Rule 11 violations, courts

should focus on the reality of events as reflected by the record

and take care not to elevate form over substance. See United 

States v. Noriega-Mill n, 110 F.3d 162, 167 (1st Cir. 1997). For 

purposes of this appeal, the pivotal datum is that the court did

not abandon the prosecutor's recommendation, but, rather, imposed

a sentence of 235 months. This sentence fell at the apex of, but

within, the agreed sentencing range. The omitted warning would

have served to inform the appellant of the consequences of his

plea should the court impose a sentence outside the agreed range; 

that warning would not have added to the appellant's store of
 

denied, 116 S. Ct. 259 (1995). The multi-part test is a 
diagnostic aid, not an obligatory ritual. See McDonald, 121 F.3d 
at 10 n.2. Here, both the trial court's error and the
harmlessness of that error are manifest; consequently, there is
no need to resort to the multi-part test.

7

knowledge if the court imposed a sentence within the GSR. The 

sentence actually imposed fell in the latter category, not the

former. It follows inexorably that, since the contingency of

which the court failed to apprise the appellant never arose, the

court's error was benign. See, e.g., McDonald, 121 F.3d at 11; 

United States v. Chan, 97 F.3d 1582, 1584 (9th Cir. 1996). 

This conclusion is especially compelling on the facts

before us. The record offers every indication that, despite the

court's lapse, the appellant had actual knowledge of the omitted

fact. Indeed, he acknowledged as much in the Agreement, the

Petition, and the questionnaire that accompanied the Petition.

Since there is no reasonable likelihood that the court's omission

affected the appellant's willingness to plead guilty, a finding

of harmlessness is appropriate. See, e.g., Chan, 97 F.3d at 

1584; United States v. McCarthy, 97 F.3d 1562, 1575-76 (8th Cir. 

1996); United States v. Martinez-Martinez, 69 F.3d 1215, 1223-24 

(1st Cir. 1995).

C. The Plea Agreement. C. The Plea Agreement. 

In his remaining argument, the appellant asserts that

the government should have done more to highlight his

cooperation. He also asserts that the government, in exchange

for his guilty plea, agreed to drop count 2 of the indictment,

yet failed to mention that count to the judge at the disposition

hearing. These assertions are not persuasive.

Passing the very real question of whether the

appellant's assertions are procedurally defaulted a claim that

8

a prosecutor breached a plea agreement ordinarily must make its

debut in the district court, see United States v. Clark, 55 F.3d 

9, 11 (1st Cir. 1995); United States v. Giorgi, 840 F.2d 1022, 

1028 (1st Cir. 1988), and the assertions in question are raised

for the first time in this venue it is plain that the Agreement

did not require the United States to dwell in detail before the

district court regarding the extent of the appellant's

cooperation. Without an explicit commitment to that effect in

the agreement itself, there is no breach. See, e.g., United 

States v. Guzman, 85 F.3d 823, 829 (1st Cir. 1996); United States 

v. Hogan, 862 F.2d 386, 388 (1st Cir. 1988). This is especially 

true where, as here, the Agreement contains an integration clause

that expressly disavows commitments not set forth in the

Agreement's text.4

Insofar as count 2 is concerned, the short answer is

that the district court docket shows that the prosecutor filed a

written motion to dismiss that count on the day of sentencing and

the court granted the motion. That ends the matter: despite the

fact that the prosecutor did not mention count 2 during his oral

presentation at the disposition hearing, the count is no longer

 

4Paragraph 23 of the Agreement reads as follows:

This written agreement constitutes the
complete Plea Agreement between the United
States, the defendant, and the defendant's
counsel. The United States has made no
promises or representations except as set
forth in writing in this plea agreement and
deny [sic] the existence of any other term
and conditions not stated herein.

9

zoetic and, therefore, the appellant received the full benefit of

his bargain.

III. CONCLUSION III. CONCLUSION

We need go no further. The purpose of insisting that

the judge inform a defendant that he will not have the right to

withdraw his guilty plea if the court eschews the prosecutor's

sentencing recommendation is to ensure that the defendant is not

induced to change his plea without being aware of a relevant

contingency. That purpose was not in any way frustrated by the

omission that occurred here since the contingency never

materialized. Thus, because the district court's bevue did not

harm or prejudice the appellant, and because the government

abided by its Agreement, the appeal implodes.

Affirmed. Affirmed. 

10