USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 97-1176 UNITED STATES OF AMERICA, Appellee, v. MANUEL CABRERA-ROSARIO, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _________________________ Juan P. Rivera Rom n on brief for appellant. ____________________ Guillermo Gil, United States Attorney, Jos A. Quiles- ______________ _________________ Espinosa, Senior Litigation Counsel, and Aixa Maldonado-Qui ones, ________ _______________________ Assistant United States Attorney, on brief for appellee. __________________________ October 17, 1997 __________________________  SELYA, Circuit Judge. Defendant-appellant Manuel SELYA, Circuit Judge. ______________ Cabrera-Rosario (Cabrera) invites us to vacate his sentence and set aside his guilty plea. For the reasons elucidated below, we decline the invitation. I. BACKGROUND I. BACKGROUND A grand jury sitting in the District of Puerto Rico returned a two-count indictment against the appellant. Count 1 charged that Cabrera, a convicted felon, knowingly received and/or possessed a number of firearms that had been transported in commerce in violation of 18 U.S.C. 922(g) and 924(e) (1994). Count 2 charged him with obliterating the manufacturer's serial numbers on two of these weapons both Cobray machine guns in violation of 18 U.S.C. 922(k) & (o) (1994). The appellant originally pleaded not guilty. On May 28, 1996, he changed course and signed a so-called Plea and Cooperation Agreement (the Agreement) that set forth the terms and conditions appertaining to a nonbinding plea bargain. See ___ Fed. R. Crim. P. 11(e)(1)(B). The Agreement each page of which was initialled by the appellant and his attorney provided, inter alia, that if Cabrera cooperated fully and truthfully, the government would stipulate to a particular set of guideline calculations designed to yield a guideline sentencing range (GSR) of 188 to 235 months (adjusted offense level 31; criminal history category VI). It clearly indicated Cabrera's awareness that, notwithstanding the stipulation, "the defendant's sentence is within the sound 2 discretion of the sentencing judge," Agreement, 6; and that, if the court were to impose a sentence in excess of 235 months, "the defendant [could] not, for that reason alone, withdraw [his] guilty plea," id. The Agreement also implied that the ___ government, unless it moved for a downward departure, see USSG ___ 5K1.1 (1995) a matter left wholly within its discretion  would recommend that the court impose a sentence within those parameters. Cabrera thereupon completed a 13-page Petition to Enter a Plea of Guilty (the Petition) that reinforced the sentencing message contained in the Agreement. The Petition included an extensive questionnaire. In addition to answering the questions, Cabrera initialled each of the 13 pages, as did his attorney. A change-of-plea hearing ensued. Judge Casellas told the appellant the purpose of the proceeding and interrogated him at some length. The appellant stated unequivocally, in response to direct questions, that he had read and completed truthfully all 13 pages; that he had conferred sufficiently with his counsel; and that he understood that his guilty plea, if accepted, would effectively waive a long list of constitutional rights. Judge Casellas then requested the prosecutor to summarize the terms of the Agreement.1 The court made it crystal  ____________________ 1The prosecutor's summary was accurate for the most part, but he misstated the projected GSR, describing it as 188 to 208 months. Given the express provisions of both the Agreement and the Petition, and the fact that the appellant and his lawyer vouchsafed the prosecutor's summary of the Agreement, we attach no decretory significance to this lapsus linguae. We note, ______ _______ moreover, that the presentence investigation report, which both 3 clear that the sentence to be imposed was within its sole discretion, subject only to the limits set by law, and the appellant acknowledged that he understood as much. Judge Casellas then reviewed the allegations of count 1 with the appellant and informed him of the maximum possible penalty. However, the judge failed to mention that the appellant could not withdraw his guilty plea if the court decided not to follow the sentencing recommendation contained in the Agreement. The district court convened the disposition hearing on December 3, 1996. At the outset, the appellant's counsel confirmed that both he and his client had read and reviewed the presentence investigation report, that the report was "accurate" and "fair-minded," and that they had no objection to its contents. In his allocution, the appellant importuned the court's forgiveness. For its part, the government did little more than stand by the Agreement and the sentencing calculations contained therein. In pronouncing sentence, Judge Casellas in effect accepted the parties' earlier stipulation, determining that the applicable GSR was 188 to 235 months. He sentenced the appellant at the apex of the range, but within it. This appeal ensued. II. ANALYSIS II. ANALYSIS The appellant's central thesis is that his guilty plea was involuntary because he was unaware of its consequences. He  ____________________ the appellant and his attorney read and pronounced "accurate" in advance of sentencing, tracked the Agreement and the Petition in describing the GSR as 188 to 235 months. 4 supports this thesis in two ways. First, he claims that the presiding judge failed to warn him that he could not withdraw his guilty plea if the judge decided not to adopt the government's sentencing recommendation. Second, he asseverates that the government breached the Agreement. We turn first to the question of appealability and then consider the appellant's arguments. A. Appealability. A. Appealability. _____________ Rule 11 exists as a means of safeguarding the fairness, integrity, and public reputation of judicial proceedings. See ___ United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991). _____________ ____________ Among other things, the rule is intended to ensure that a defendant who pleads guilty does so with an "understanding of the nature of the charge and the consequences of his plea." McCarthy ________ v. United States, 394 U.S. 459, 467 (1969). Because of the ______________ importance of the interests that Rule 11 protects, we sometimes will entertain on direct appeal a Rule 11 challenge even though the essence of the challenge was not raised in the nisi prius court. See, e.g., United States v. McDonald, 121 F.3d 7, 10 (1st ___ ____ _____________ ________ Cir. 1997); Parra-Ibanez, 936 F.2d at 593. This is such a case. ____________ B. The Plea Colloquy. B. The Plea Colloquy. _________________ Fed. R. Crim. P. 11(e)(2) specifically provides, with respect to nonbinding plea agreements,2 that "the court shall  ____________________ 2The plea agreement at issue here is of this stripe, drawing its essence from Fed. R. Crim. P. 11(e)(1)(B). In it, the prosecutor effectively agreed to take a position vis- -vis sentencing (i.e., not opposing a sentence within the stipulated GSR), with the understanding that this "recommendation" would not bind the court. 5 advise the defendant that if the court does not accept the [sentencing] recommendation or request the defendant nevertheless has no right to withdraw the plea." In this instance, the district judge conducted a painstaking Rule 11 colloquy in which he inquired about the Agreement and reminded the appellant that the government's sentencing recommendation was not binding on the court. There was, however, a flaw: the judge never told the appellant explicitly that he would be unable to withdraw his plea should the court fail to act in accordance with the agreed disposition. Notwithstanding the importance of the prophylaxis that Rule 11 prescribes, the detection of an error does not necessarily require vacation of a defendant's plea. The drafters of Rule 11 made it pellucid that "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 11(h). Under this proviso, "even an error implicating Rule 11's core concerns will not require vacating a guilty plea if the error, in context, is harmless." McDonald, 121 F.3d at 11. ________ Thus, the question before us reduces to the harmlessness vel non ___ ___ of the judge's omission.3  ____________________ 3When a defendant moves in the district court to withdraw an earlier guilty plea, we customarily test the district court's resolution of that motion through a multi-faceted format. See ___ United States v. Gonzalez-Vazquez, 34 F.3d 19, 22-23 (1st Cir. _____________ ________________ 1994); United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st ______________ _______________ Cir. 1994). We occasionally have utilized this same method of analysis in cases in which a defendant alleges for the first time on appeal that the sentencing court violated Rule 11. See, e.g., ___ ____ United States v. Lopez-Pineda, 55 F.3d 693, 696 (1st Cir.), cert. _____________ ____________ _____ 6 To be sure, due process demands that a plea in a criminal case "be made voluntarily, knowingly, intelligently, and with an awareness of the overall circumstances and probable consequences." Id. (citing Boykin v. Alabama, 395 U.S. 238, 243 ___ ______ _______ n.5 (1969)). In failing to apprise the appellant of one of the consequences that would flow from the court's disapproval of the prosecutor's sentencing recommendation, the district court blemished an otherwise impeccable plea colloquy, violated Rule 11, and precipitated a due process challenge. Nonetheless, in the idiosyncratic circumstances of this case, the court's error did not impair the appellant's substantial rights. We explain briefly. In evaluating incipient Rule 11 violations, courts should focus on the reality of events as reflected by the record and take care not to elevate form over substance. See United ___ ______ States v. Noriega-Mill n, 110 F.3d 162, 167 (1st Cir. 1997). For ______ ______________ purposes of this appeal, the pivotal datum is that the court did not abandon the prosecutor's recommendation, but, rather, imposed a sentence of 235 months. This sentence fell at the apex of, but within, the agreed sentencing range. The omitted warning would have served to inform the appellant of the consequences of his plea should the court impose a sentence outside the agreed range; _______ that warning would not have added to the appellant's store of  ____________________ denied, 116 S. Ct. 259 (1995). The multi-part test is a ______ diagnostic aid, not an obligatory ritual. See McDonald, 121 F.3d ___ ________ at 10 n.2. Here, both the trial court's error and the harmlessness of that error are manifest; consequently, there is no need to resort to the multi-part test. 7 knowledge if the court imposed a sentence within the GSR. The ______ sentence actually imposed fell in the latter category, not the former. It follows inexorably that, since the contingency of which the court failed to apprise the appellant never arose, the court's error was benign. See, e.g., McDonald, 121 F.3d at 11; ___ ____ ________ United States v. Chan, 97 F.3d 1582, 1584 (9th Cir. 1996). _____________ ____ This conclusion is especially compelling on the facts before us. The record offers every indication that, despite the court's lapse, the appellant had actual knowledge of the omitted fact. Indeed, he acknowledged as much in the Agreement, the Petition, and the questionnaire that accompanied the Petition. Since there is no reasonable likelihood that the court's omission affected the appellant's willingness to plead guilty, a finding of harmlessness is appropriate. See, e.g., Chan, 97 F.3d at ___ ____ ____ 1584; United States v. McCarthy, 97 F.3d 1562, 1575-76 (8th Cir. _____________ ________ 1996); United States v. Martinez-Martinez, 69 F.3d 1215, 1223-24 _____________ _________________ (1st Cir. 1995). C. The Plea Agreement. C. The Plea Agreement. __________________ In his remaining argument, the appellant asserts that the government should have done more to highlight his cooperation. He also asserts that the government, in exchange for his guilty plea, agreed to drop count 2 of the indictment, yet failed to mention that count to the judge at the disposition hearing. These assertions are not persuasive. Passing the very real question of whether the appellant's assertions are procedurally defaulted a claim that 8 a prosecutor breached a plea agreement ordinarily must make its debut in the district court, see United States v. Clark, 55 F.3d ___ _____________ _____ 9, 11 (1st Cir. 1995); United States v. Giorgi, 840 F.2d 1022, ______________ ______ 1028 (1st Cir. 1988), and the assertions in question are raised for the first time in this venue it is plain that the Agreement did not require the United States to dwell in detail before the district court regarding the extent of the appellant's cooperation. Without an explicit commitment to that effect in the agreement itself, there is no breach. See, e.g., United ___ ____ ______ States v. Guzman, 85 F.3d 823, 829 (1st Cir. 1996); United States ______ ______ _____________ v. Hogan, 862 F.2d 386, 388 (1st Cir. 1988). This is especially _____ true where, as here, the Agreement contains an integration clause that expressly disavows commitments not set forth in the Agreement's text.4 Insofar as count 2 is concerned, the short answer is that the district court docket shows that the prosecutor filed a written motion to dismiss that count on the day of sentencing and the court granted the motion. That ends the matter: despite the fact that the prosecutor did not mention count 2 during his oral presentation at the disposition hearing, the count is no longer  ____________________ 4Paragraph 23 of the Agreement reads as follows: This written agreement constitutes the complete Plea Agreement between the United States, the defendant, and the defendant's counsel. The United States has made no promises or representations except as set forth in writing in this plea agreement and deny [sic] the existence of any other term and conditions not stated herein. 9 zoetic and, therefore, the appellant received the full benefit of his bargain. III. CONCLUSION III. CONCLUSION We need go no further. The purpose of insisting that the judge inform a defendant that he will not have the right to withdraw his guilty plea if the court eschews the prosecutor's sentencing recommendation is to ensure that the defendant is not induced to change his plea without being aware of a relevant contingency. That purpose was not in any way frustrated by the omission that occurred here since the contingency never materialized. Thus, because the district court's bevue did not harm or prejudice the appellant, and because the government abided by its Agreement, the appeal implodes. Affirmed. Affirmed. ________ 10