# United States Court of Appeals
## For the First Circuit

No. 07-2064

UNITED STATES OF AMERICA,

Appellee,

v.

DONALD MCMULLIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella and Selya, Circuit Judges,
and Domínguez,[*] District Judge.

William E. Christie, with whom Shaheen & Gordon, P.A., was on brief for appellant.
Aixa Maldonado-Quiñones, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, were on brief for appellee.

May 29, 2009

---

[*]  Of the District of Puerto Rico, sitting by designation.

**Domínguez, District Judge.** The instant case is an appeal from the United States District Court for the District of New Hampshire, challenging the district court's denial of Donald McMullin's ("Appellant/McMullin") motion to suppress as well as the subsequent denial of Appellant's motion to withdraw guilty plea resulting in his conviction.

Appellant alleges that the district court erred in its finding of probable cause as there were no facts set forth in the affidavit in support of the warrant application to establish that Appellant had placed Diazinon in the well of his next door neighbor, Mr. James Fitzpatrick, or that any Diazinon was located on Appellant's property. Appellant further alleges that both the state district judge[1] for the District Court of southern Carroll County, New Hampshire and the federal district judge, incorrectly applied the law by citing to a history of animus between McMullin and Fitzpatrick as the basis for probable cause when the facts stated in the affidavit were obtained from the victim, Fitzpatrick, an interested, unreliable witness. Moreover, Appellant contends that the "good faith" exception is inapplicable because the affidavit was lacking in probable cause and deficient as the Wakefield police omitted material facts from it.

As to Appellant's motion to withdraw his guilty plea McMullin

---

[1] The state district judge originally issued a search warrant related to a state attempted second degree assault and criminal mischief felony.

alleges that because the evidence shows that he did not comprehend the law at the time he entered his guilty plea, the district court abused its discretion in denying his subsequent motion to withdraw the guilty plea.

For the reasons stated herein, we affirm the district court's denial of Appellant's motion to suppress and motion to withdraw his guilty plea.

## I.  BACKGROUND

On November 17, 2004, members of the Wakefield, New Hampshire Police Department ("WPD") executed a state search warrant, issued by a state district court, of McMullin's residence.  The original search warrant, which was based upon a search warrant application and supporting affidavit submitted by Sergeant Mark O'Brien, was part of an investigation into the poisoning or attempted poisoning of McMullin's next door neighbor, Fitzpatrick.  The incriminating evidence recovered during the search, which consisted of more that two pounds of marijuana (found in a trash bag and in smaller bags on different levels of the house), several firearms and ammunition, prompted the filing of the instant federal criminal indictment charging McMullin with being an unlawful user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) (counts one and two), and an unlawful user in possession of ammunition in violation of 18 U.S.C. § 922(g)(3) (counts three and four).

On December 5, 2005, Appellant sought to suppress both the

evidence seized and the self-incriminatory statements made to the police during the execution of the warrant. On May 3, 2006, the district court denied on the record Appellant's motion to suppress via an endorsed order indicating that an opinion would follow. Thereafter, Appellant entered into a conditional plea agreement, signed on June 6, 2006, for which a plea hearing was held on June 21, 2006. During the plea colloquy the district court clarified that McMullin had reserved the right to appeal the court's endorsed order explaining its earlier denial of his motion to suppress. Subsequently, on July 8, 2006, the court issued an opinion denying Appellant's motion to suppress, finding that there was a substantial basis from which the issuing state judge could reasonably conclude that a crime had been committed and that evidence of the crime would be found within Appellant's premises. In the alternative, the court found that the good faith exception to the Fourth Amendment's exclusionary rule, set forth in United States v. Leon, 468 U.S. 897 (1984), applied to this case.

On August 15, 2006, nearly two months after Appellant's change of plea hearing, wherein he was adjudicated guilty, but prior to sentencing, Appellant moved to withdraw his guilty plea as to counts one and three of the indictment charging him with being an unlawful user of drugs in possession of a firearm and ammunition. On January 29, 2007, Appellant filed a memorandum in support of his original motion. In said motion McMullin alleged for the first

time that his guilty plea as to counts one and three had not been voluntarily, intelligently, and knowingly made. Appellant alleged that he was pressured into pleading guilty, that he had a short time to make up his mind,[2] and that he did not understand what being a user in possession of a firearm meant. On January 31, 2007, the district court held a hearing on McMullin's petition to withdraw his plea and on July 3, 2007, the district court denied his request and entered judgment sentencing McMullin to a prison term of twelve (12) months and one (1) day and three (3) years of supervised release on each count. The court found that Appellant had failed to show that a fair and just reason existed to authorize the withdrawal of his plea. Consequently, on July 5, 2007, McMullin timely filed a notice of appeal, contesting the district court's denial of his motion to suppress as well as his request to withdraw his guilty plea as to counts one and three of the indictment.

## II. ANALYSIS

### A. Standard of Review

In this circuit a review of the denial of a motion to suppress is bifurcated: a district court's legal conclusion that a given set of facts constituted probable cause will be reviewed *de novo*, whereas factual findings are reviewed for clear error. United

---

[2] Appellant signed his plea agreement on June 6, 2006. The plea hearing was held on June 21, 2006.

-5-

States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006). "'A clear error exists only if, after considering all of the evidence, we are left with a definite and firm conviction that a mistake has been made.'" United States v. Woodbury, 511 F.3d 93, 96 (1st Cir. 2007) (quoting United States v. Charles, 213 F.3d 10, 18 (1st Cir. 2000)). The applicability of the Leon good faith exception is reviewed *de novo*. See id. at 93 (citing United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001)). However, "'we will uphold a district court's decision to deny a suppression motion provided that any reasonable view of the evidence supports the decision.'" Id. at 96-97 (quoting Charles, 213 F.3d at 18).

As to the denial of a motion to withdraw a guilty plea, we review for abuse of discretion. United States v. Moore, 364 F.3d 129, 134 (1st Cir. 2004).

**B. Motion to Suppress**

In issuing the search warrant the state district judge found that the Appellant had a motive to contaminate Fitzpatrick's well considering that Fitzpatrick was to be a witness in a pending case against the Appellant. Furthermore, the state district judge found that there was sufficient evidence to believe that crimes probably had been committed and that evidence of those crimes would likely be found in Appellant's premises.[3] On the other hand Appellant

---

[3] It should be noted that during the execution of the warrant the police also located one opened bag of Diazinon in McMullin's shed.

contends that at the time the Wakefield police requested the search warrant, probable cause was absent. Appellant further contends that since the affidavit lacked good faith, included false statements and material omissions, and was facially invalid, the good faith exception is inapplicable to the instant case.

We disagree with Appellant's contentions and conclude that the district court did not err in denying Appellant's motion to suppress. We concur with the district court's ultimate determination that the state district judge had a substantial basis for concluding that probable cause existed to believe that McMullin had contaminated Fitzpatrick's well with Diazinon and that a fair probability existed that the pesticide would still be at McMullin's property.

## 1. Probable Cause

> The issuance of a warrant must satisfy two requirements for constitutionality under the Fourth Amendment, " . . . [it] must demonstrate probable cause to believe that (1) a crime has been committed — the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched — the so — called 'nexus' element."

Woodbury, 511 F.3d at 97 (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)).

> Probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "In determining the sufficiency of an

> affidavit supporting a search warrant, we consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises." <u>United States</u> v. <u>Beckett</u>, 321 F.3d 26, 31 (1st Cir. 2003).

<u>United States</u> v. <u>Reiner</u>, 500 F.3d 10, 15 (1st Cir. 2007) (internal citations modified). A judge's determination of probable cause must be accorded "great deference by reviewing courts." <u>Gates</u>, 462 U.S. at 236 (citing <u>Spinelli</u> v. <u>United States</u>, 393 U.S. 410, 419 (1969)).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. <u>And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed.</u>

<u>Id.</u> at 238-39 (emphasis supplied) (quoting <u>Jones</u> v. <u>United States</u>, 362 U.S. 257, 271 (1960)); <u>see</u> <u>also</u> <u>United States</u> v. <u>Grubbs</u>, 547 U.S. 90, 95 (2006) (quoting <u>Gates</u>, 462 U.S. at 238). "Moreover, given the strong preference for warrants under our Fourth Amendment jurisprudence, normally a reviewing court will defer to an issuing [judge's] 'probable cause' determination in a doubtful or marginal case." <u>United States</u> v. <u>Zayas-Diaz</u>, 95 F.3d 105, 111 (1st Cir. 1996).

After reviewing the search warrant application and the

supporting affidavit submitted by Sgt. O'Brien to the state district judge, which included several other informational attachments, we find that the judge "had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id.

Appellant requests us to consider that "[w]hen there is a 'significant chance that an accuser's lone and unverified allegations may be colored by existing acrimony with the accused, probable cause is not present, and it would be 'unconstitutional' to act just on the accuser's words." Appellant's Br. at 17 (citing Hebron v. Touhy, 18 F.3d 421 (7th Cir. 1994)).

We disagree with Appellant's contention that the warrant application and supporting affidavit submitted to the state district judge contained only Fitzpatrick's lone and unverified allegations. On the contrary, Sgt. O'Brien corroborated Fitzpatrick's complaint by, among other things, (1) visiting Fitzpatrick's residence and checking the contaminated well's location, which revealed the close proximity of the well to McMullin's property and the ready access he had to the well at any time of the day; (2) taking as evidence the tape and granular substances removed from the well; (3) reviewing, from the samples obtained by Fitzpatrick, the test results performed by DES Health Risk Group, which showed that Diazinon was present in the well;[4]

---

[4]  We note that Sgt. O'Brien collected two samples from the well and although he submitted the samples to the lab for analysis, the results were not available at the time that he applied for the

(4) researching what Diazinon is used for, the effects of being exposed to it and how long it takes to disappear in water; (5) checking the Wakefield Police Department records for any reports filed by Fitzpatrick and/or McMullin in order to corroborate Fitzpatrick's allegation that there had been past disputes between them; (6) verifying that two civil suits had been filed against McMullin, one by the Crew Road Association for road damages and the other by the Town of Wakefield, for which Fitzpatrick was a potential witness; and finally (7) verifying that McMullin had been charged and indicted on two felony charges involving multiple allegations of vandalism near Crew Road, and that the case was pending before Carroll County Superior Court wherein Fitzpatrick was also a potential witness.[5] Therefore, any suspicion that might have existed about the reliability of Fitzpatrick's statements was allayed by Sgt. O'Brien's aforementioned corroborative investigations. See Hebron, 18 F.3d at 423.

Furthermore, we are satisfied with the corroborative investigations performed by Sgt. O'Brien, and find that his efforts clearly established that Fitzpatrick was a reliable witness worthy

search warrant.

[5] Appellant alleges that Fitzpatrick was never a witness against him as stated in the affidavit. What the affidavit asserts is that in the cases "pending" before the state court, Fitzpatrick is a witness. It does not state that Fitzpatrick testified against McMullin. Fitzpatrick need only be announced as a potential witness in order for said fact to cause "motive."

of credibility.  We cannot readily cast aside evidence provided by victims as "[t]his court has affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause."  Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004) (citing B.C.R. Transp. Co., Inc., v. Fontaine, 727 F.2d. 7, 10 (1st Cir. 1984)); see also Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004) ("Victims' complaints are a prime source of investigatory information for police officers.  In the absence of circumstances that would raise a reasonably prudent officer's antennae, there is no requirement that the officer corroborate every aspect of every complaint with extrinsic information.  The uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause.")

Therefore, we agree with the district court that "the issuing [judge] could have drawn reasonable inferences from the attested facts sufficient to support a probable cause determination, and, in any event, sufficient to satisfy this court that she had a substantial basis upon which to conclude that probable cause existed."  United States v. McMullin, No. 05-142, 2006 WL 2036994, *3 (D.N.H. July 18, 2006) (denial of motion to suppress).  First, the record shows it was apparent that Fitzpatrick's well had been intentionally contaminated with Diazinon since said chemical is not naturally occurring nor can it penetrate through the ground, by

-11-

natural means, to the level of the well pump, faucets and shower head, in the granular form it was found. Furthermore, the plumber who was called to investigate the low water pressure at Fitzpatrick's home was the person who discovered the granular substance in Fitzpatrick's well, which was subsequently examined by a state agency, and tested positive for Diazinon. The record further shows that since the well cap had a breather cap with a hole of around 2-3 inches in diameter that could be unscrewed, someone could have easily contaminated Fitzpatrick's well with Diazinon through the cap.

Second, we find that McMullin had a motive to contaminate Fitzpatrick's well. The record shows that said motive could have reasonably emanated from the history of animosity between Fitzpatrick and McMullin, as well as Fitzpatrick's potential participation as a witness in the civil and criminal cases pending against McMullin.[6] Third, the record shows that McMullin also had the best opportunity to put Diazinon in Fitzpatrick's well since Sgt. O'Brien's investigation revealed that the well was located near the boundary line between McMullin's and Fitzpatrick's property, and McMullin had ready access to the well from his own

_____

[6] The fact that exact copies of the police reports were not provided to the state district judge, but a summary of each instead, is of no consequence. The purpose of the information was simply to corroborate the fact that there was an irrefutable history of animosity between McMullin and Fitzpatrick, to the point of resembling New Hampshire's version of the Hatfields v. the McCoys.

property at any time. Moreover, the authorities found unused quantities of the pesticide in Appellant's possession.

Therefore, "[i]t was not unreasonable for [the state district judge] to determine that a crime was committed, and to infer that defendant committed it, and, therefore, that he would likely possess pesticides containing Diazinon identical to those found in the well." McMullin, 2006 WL 2036994, at *5. Hence, we find that the state district judge had "'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones, 362 U.S. at 271).

Consequently, the district court did not err in denying Appellant's motion to suppress and we need not consider the district court's alternate holding concerning the Leon good faith exception.

## C. **Motion to Withdraw Guilty Plea**

The federal district judge, in denying Appellant's motion to withdraw his guilty plea, found that McMullin had "not shown that a fair and just reason exist[ed] such as to permit the withdrawal of his pleas." United States v. McMullin, No. 05-142, 2007 WL 1933577, *1 (D.N.H. July 3, 2007) (denial of motion to withdraw guilty plea). McMullin's main allegation is that the district court abused its discretion in denying his motion to withdraw the guilty plea because that plea was not voluntary, intelligent and knowing. McMullin contends that the evidence shows that he did not

-13-

understand the law at the time he changed his plea,[7] that he was pressured into making the plea by his prior attorney, that he had a short period of time to make up his mind on whether to change his plea, and that at the time of sentencing he was not on his normal medications and had not eaten for nearly a day.

"It is well established that a defendant does not have an absolute right to withdraw a guilty plea." United States v. Negron-Narvaez, 403 F.3d 33, 36 (1st Cir. 2005) (citing United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (1st Cir. 1994)). Consequently, "[a] defendant bears the burden of demonstrating a 'fair and just reason' for seeking to withdraw his plea." United States v. Moore, 362 F.3d 129, 134 (1st Cir. 2004) (citing Fed. R. Crim. P. 32(d)). "In determining the weight to be attached to a proffered reason, a court ordinarily should focus on whether any of Rule 11's core concerns have been implicated, that is, whether the plea, when entered, was voluntary, intelligent, and knowing." Negron-Narvaez, 403 F.3d at 36 (citing United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997)). In authorizing or rejecting a defendant to withdraw his guilty plea, the court must assess whether the defendant's plea was "free from coercion, . . . [and whether he] underst[ood] the charges, and . . . consequences of the

---

[7]McMullin specifically contends that when he changed his plea, he "did not understand the law because he did not appreciate the meaning of the term 'unlawful user' within the context of 18 U.S.C. § 922(g)(3)." Appellant's Br. 29.

guilty plea." United States v. Pagan-Ortega, 372 F.3d 22, 28 (1st Cir. 2004). The court should also consider the following additional factors: "the plausibility of the proffered reason, the timing of the attempted retraction, the presence or absence of a protestation of innocence, and whether the circumstances cast serious doubt on the bona fides of the original plea." United States v. Torres-Rosa, 209 F.3d 4, 8-9 (1st Cir. 2000) (citing United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994)); see also Negron-Narvaez, 403 F.3d at 36 (quoting United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992)).

After reviewing the record we find that the district court judge did not abuse his discretion in denying Appellant's motion to withdraw. As found by the district court, Appellant's "contentions are unsupported, and implausible." McMullin, 2007 WL 1933577, at *2. The record pellucidly shows that McMullin's plea was voluntary, intelligent, and knowing. The court clearly explained the elements of the offenses to McMullin, and McMullin stated under oath that he understood them.

Most critical, on the day of the plea hearing, after McMullin had agreed to plead guilty to counts one, two, three and four, McMullin changed his mind as to counts two and four which charged him with being a drug user in possession of firearms (count two) and ammunition (count four) from on or about September 7 through September 21, 2005. McMullin stated that since he had been in

-15-

pretrial confinement since his arrest on November 19, 2004, and therefore had not used marijuana or been in possession of firearms and/or ammunition, which were at his house, he did not qualify as a "drug user" from on or about September 7 through September 21, 2005. Appellant, therefore clearly understood that under Section 922(g)(3), his drug use must have been contemporaneous with his possession of firearms and ammunition. Consequently, we find, as did the federal district court, that since he understood the requirements under Section 922 (g)(3) pertaining to counts two and four, he undeniably understood the requirements under Section 922(g)(3) pertaining to counts one and three.

Furthermore, Appellant's principal reason for requesting to withdraw his plea, that had he realized what being an "unlawful user" was under Section 922(g)(3), he would not have pled guilty since he was not regularly using marijuana, is unsupported by the record. First, the police seized from McMullin's house more than two pounds of marijuana, several firearms and ammunition. See Harris v. United States, 390 U.S. 234, 236 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."). Second, during the plea hearing the district court explained, among other matters, that

> the government would have to prove that
> [McMullin was] an unlawful user of a

-16-

> controlled substance. In this case . . . that's marijuana . . . and that at the time of [his] unlawful use of marijuana [he was] . . . – with respect to count one, . . . in possession of a firearm . . . [a]nd with respect to count three, while using marijuana unlawfully, [he was] in possession of ammunition.

Crim. Case No. 05-142-01-SM, Docket No. 48, pg. 7. Following said explanation Appellant was specifically asked whether he understood what had just been explained by the judge, to which McMullin answered "Yes." Id.

Third, after the government's factual representation of what the government would be prepared to prove if the case went to trial, the Judge stated that although he knew it was "a lengthy proffer and probably a lot of it d[id not] have to do particularly with the offense charged . . . [t]he basic question [was, whether McMullin was] in fact using marijuana at a time when [he] possessed the firearms listed in the indictment." Id. at 11. McMullin answered, under oath, that "[j]ust [as to] count one and three [on] November 19 . . . Yes." Id. In abundance of caution, the district judge asked McMullin if there was "[n]o doubt in [his] mind about that at all." Id. at 12. To which McMullin answered "[n]o, that's true." Id. McMullin was further asked by the district judge whether he had "reviewed each term of the written plea agreement" with his lawyer, and he answered "Yes." Id. at 14-15.

Fourth, the record shows that Appellant's prior trial attorney spent long hours discussing with McMullin what constituted a "drug

-17-

user," what "using marijuana" meant with respect to "contemporaneously possessing" a firearm and fully advised McMullin as to the nature of his available defenses.

Fifth, the record shows that during a parallel state prosecution for possession with intent to distribute marijuana, which arose out of the same search and arrest, McMullin testified that he was in fact a drug user on or about November 19, 2004. McMullin further testified that he used marijuana to alleviate his multiple sclerosis symptoms and that he had bought such a large amount because he would "rather [buy] it once than thirty two times." Consequently, we leave unscathed the district judge's conclusion that

> [i]t is not plausible that when [McMullin] admitted under oath that he used marijuana and possessed firearms and ammunition on or about November 19, 2004, he did not understand that he was in fact a "user" at that time — both because [Jonathan] Saxe [, his prior attorney] fully explained the nature of any potential defenses in that regard, and because he admitted to being a user at the plea hearing and had already testified under oath in the state prosecution that he was then a regular user — insisting that the large amount of marijuana seized from his house was not indicative of distribution but was strictly for his personal (medicinal) use, and that he expected to continue using it indefinitely into the future due to his multiple sclerosis.

McMullin, 2007 WL 1933577, at *4.

Therefore, Appellant was clearly aware of the elements of the offense and understood what an "unlawful user" entailed under Section 922(g)(3).

As to Appellant's allegation that he was pressured or coerced into pleading guilty as to counts one and three by his prior attorney, and that he had a short period of time to make up his mind on whether to change his plea, we find that these arguments were not properly brought before this court and were therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Appellant merely states that he met with his attorney on June 6, 2006, in regard to the plea agreement, but that his attorney was not permitted to have a contact visit and therefore had to go over the agreement through the glass in the attorney—client meeting area. Nothing in this factual scenario indicates that Appellant's prior attorney pressured or coerced him in any way into pleading guilty or that Appellant had a short period of time to makeup his mind on whether to change his plea. On the contrary, the record supports the district court's finding that Appellant's lawyer "testified credibly, . . . that he spent numerous hours discussing with [McMullin] the 'drug user' element, the temporal nexus requirement, that the drug use must be more than a single occasion, or sporadic use remote in time relative to the firearms/ammunition possession and relevant potential defenses." McMullin, 2007 WL 1933577, at *3.

Finally, in a footnote Appellant tries to hint to the court that he may have been confused or disoriented during the sentencing

hearing since he was not on his normal medications and had not eaten for nearly a day. We find this allegation to be unsupported by the record. The transcript of McMullin's sentencing proceeding, held on June 27, 2007, shows that McMullin responded coherently, intelligently, and clearly to all the questions asked by the attorneys and the court. McMullin was also alert, clear, and concise during his allocation. What is more, during the sentencing hearing the district court stated, in regard to McMullin's multiple sclerosis condition, that he looked a little better than the last time he appeared before the court.

Consequently, for the reasons stated above we find that the district court did not err in denying Appellant's motion to withdraw since the record clearly shows that Appellant's plea was voluntary, intelligent, and knowing.

## III. CONCLUSION

Therefore, we affirm the district court's denial of Appellant's motion to suppress and motion to vacate his guilty plea.

**Affirmed.**