# United States Court of Appeals
## For the First Circuit

No. 04-2709

UNITED STATES OF AMERICA,

Appellee,

v.

PAUL M. ANDERSON,

Defendant, Appellant.

APPEAL FORM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Campbell and Bowman,[*] Senior Circuit Judges,
and Lipez, Circuit Judge.

Edward E. Eliot on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula
Silsby, United States Attorney, was on brief, for appellee.

June 29, 2006

[*] Of the Eighth Circuit, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.    Appellant  Paul  M.  Anderson challenges  his  sentence  after  pleading  guilty  to  charges  of distributing and possessing with intent to distribute cocaine and cocaine base.    The district court sentenced Anderson to 57 months in  prison,  with  concurrent  terms  of  four  years  of  supervised release,  and  a  $600  mandatory  penalty.    Anderson  argues  that  the district court erred by applying a two-level sentencing enhancement for  firearm  possession  under  the  sentencing  guidelines.    He  also challenges his sentence under <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005),  which  was  decided  after  the  court  sentenced  Anderson. While  we  reject  his  argument  that  there  was  error  in  the  court's application of a guidelines enhancement, we remand his case for re-sentencing  under  <u>Booker</u>.    The  government  had  the  burden  of demonstrating  that  the  application  of  the  mandatory  sentencing guidelines by the district court was harmless error.    It has not done so.

## I.

On November 14, 2003, a confidential informant told drug agents that Anderson had agreed to sell the informant cocaine at Anderson's house later that day.  The agents followed the informant to Anderson's house, where Anderson sold him cocaine.  Over the next four weeks, the informant made several additional controlled buys of cocaine and crack cocaine from Anderson in his house.  On January 7, 2004, agents searched Anderson's house pursuant to a

warrant and seized several baggies, each of which contained cocaine. During the search, agents also seized a loaded Smith and Wesson 9mm semi-automatic handgun, found in the living room along with a ledger recording money owed to Anderson. The agents arrested Anderson.

On August 26, 2004, Anderson appeared in district court and pled guilty to a six-count indictment. Counts I through III and VI charged him with distributing and possessing with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Counts IV and V alleged distribution and possession with intent to distribute more than 5 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B).

The pre-sentence investigation report ("PSI") found a base offense level of 28 and a Criminal History of I. The PSI then recommended a two-level reduction for the defendant's acceptance of responsibility and reported that the government would recommend a further one-level reduction. The PSI also recommended a two-level enhancement for firearm possession. The PSI recommended against a "safety valve" reduction. The total adjusted offense level in the PSI was 27, yielding an initial guidelines sentencing range of 70-87 months.

The PSI also noted that Anderson and his mother stated that Anderson had been dealing with serious mental health problems since childhood. While on pretrial supervision, Anderson met with

-3-

Dr. Jeremy Spiegel, a psychiatrist, who observed symptoms of multiple anxiety disorders, including obsessive-compulsive disorder, panic disorder with agoraphobia, anxiety, and social anxiety. The PSI noted that Anderson might request a downward departure based on his mental health problems.

Anderson objected to the PSI. He disputed the recommended two-level firearm enhancement, stating that the gun was not used in connection with the crime because "this firearm was purchased as personal protection after a series of armed home invasions in Sanford, Maine in late 2000." He also argued that his possession of a gun did not preclude the benefits of the "safety valve" reduction.

At the sentencing hearing, the government agreed that the defendant would be eligible for the safety valve reduction because, it stated, "[the prosecution] would have to provide the court with some evidence that the gun was used in connection with the offense, which [the prosecution] ha[s] no such evidence." The district court applied the two-level safety valve reduction.

The government then argued that, notwithstanding the application of the safety valve reduction, the two-level firearm enhancement should apply. The defendant challenged the application of the enhancement, arguing that, under Blakely v. Washington, 542 U.S. 296 (2004), the government had to prove that the gun was actually connected with the offense in order for the firearm

-4-

enhancement to apply. Therefore, according to the defendant, the enhancement was inapplicable because the government stated that it could not prove this fact. The district court disagreed and applied the enhancement.

The defendant also asked the district court for a downward departure on the basis of his serious mental health problems. The district court noted that the Guidelines discouraged departures on the basis of mental health unless the facts took the case outside of the "heartland" of other cases involving defendants with mental health problems. After carefully considering the facts, the district court noted that "[i]t's unfortunately the case that Mr. Anderson's condition is not outside the heartland" and that, although his condition was serious and severe, the court "see[s] a number of severe or serious mental health issues."

The district court calculated a final offense level of 25, yielding a guidelines sentencing range of 57-71 months. The district court imposed a sentence of 57 months in prison, with concurrent terms of four years of supervised release, and a $600 mandatory penalty. The judge stated that the crime "deserves the punishment that is being imposed," and noted that the sentence, at the bottom of the guidelines range, was "a legitimate and adequate sentence."

Anderson raises two main arguments on appeal. First, he argues that the district court improperly applied the two-level firearm sentencing enhancement under the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1). Second, he challenges his sentence in the wake of Booker, where the Supreme Court held that the guidelines must be treated as advisory rather than mandatory. We address his arguments in turn.

## A. Application of the Firearm Sentencing Enhancement

We review a district court's interpretation of the guidelines de novo and its factual findings for clear error. United States v. Robinson, 433 F.3d 31, 35, 38 (1st Cir. 2005). In this case, the district court applied a two-level sentencing enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1), noting that the defendant acknowledged that the police had found a loaded handgun in his apartment, and that the defendant stated that he bought the gun for "personal protection after a series of armed home invasions" in his area. The court also applied a two-level reduction under the "safety valve" provision of U.S.S.G. § 5C1.2. The defendant and the prosecution agreed that the provision was applicable, despite its requirement that the defendant show that he was not in possession of the firearm in connection with the offense.

The defendant argues that, because the government conceded that the safety valve applies, the district court erred in applying the two-level sentencing enhancement for gun possession. The district court found nothing contradictory about applying both the enhancement and the reduction, concluding that different standards apply for each.

We agree with the district court. The burdens for establishing the applicability of the safety valve reduction and the weapon enhancement are different. Section 5C1.2, the "safety valve" provision, permits a two-level reduction in offense level if the defendant and the offense meet certain enumerated criteria. See United States v. McLean, 409 F.3d 492, 500 (1st Cir. 2005). Pertinent to this case, "the safety valve is unavailable to a defendant who 'possesses a firearm . . . in connection with the offense.'" Id. (quoting U.S.S.G. § 5C1.2). Thus, the defendant has the burden of establishing, by a preponderance of the evidence, that he did not possess the firearm in connection with the offense. See United States v. Miranda-Santiago, 96 F.3d 517, 529 n.25 (1st Cir. 1996).

Section 2D1.1(b)(1) permits a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." To garner this enhancement, the government has the initial burden of establishing "that a firearm possessed by the defendant was present during the commission of the offense." United States v. McDonald,

121 F.3d 7, 10 (1st Cir. 1997). Once the government has made that showing, "the burden shifts to the defendant to persuade the factfinder that a connection between the weapon and the crime is clearly improbable." Id. (emphasis added); see also U.S.S.G. § 2D1.1(b)(1), cmt. n.3 ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.").

Thus, the burden on the defendant is different for these two sentencing provisions. The application of the safety valve (which requires the defendant to establish by a preponderance of the evidence that he did not possess the firearm in connection with the offense) does not necessarily mean that the defendant can meet the heavier burden, once the government shows that the firearm was present during the commission of the offense, of establishing that it was clearly improbable that the gun was used in connection with the offense.

Other courts have addressed similar arguments regarding the interaction of the safety valve adjustment under § 5C1.2 and the firearm enhancement under § 2D1.1(b)(1).[1] At least two

---

[1] We have previously held, in the co-conspirator liability context, that "any automatic equation of the possession of a firearm by another and unavailability of the safety valve is mistaken." United States v. Figueroa-Encarnacion, 343 F.3d 23, 35 (1st Cir. 2003) (concluding that a co-conspirator's firearm possession may not be attributable to the defendant for purposes of determining the applicability of the safety valve); see also United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1187 (10th Cir. 2004) (same). Because the basis for responsibility in these co-

-8-

circuits have concluded that the application of a firearm enhancement under § 2D1.1(b) does not necessarily preclude a safety valve reduction under § 5C1.2.[2]  See United States v. Bolka, 355 F.3d 909, 915 (6th Cir. 2004) (noting the different burdens of proof under the two sentencing provisions); United States v. Nelson, 222 F.3d 545, 551 (9th Cir. 2000) (same).  In other words, these courts held that the defendant's failure to meet the higher burden of proof set forth in the firearm enhancement provision of the guidelines did not necessarily preclude the defendant from meeting the lower burden of proof set forth in the safety valve reduction provision.

In support of his position that the application of the safety valve reduction precludes the application of the firearm enhancement in his case, Anderson relies primarily on United States v. Vasquez, 161 F.3d 909 (5th Cir. 1998).  In Vasquez, the Fifth Circuit stated that "§ 2D1.1(b)(1) and § 5C1.2(2) . . . should be

---

conspirator liability cases differs from the case presented here, however, we do not base our holding on this precedent.

[2]  The district court in both of those cases held that the application of the firearm enhancement during sentencing automatically precluded the defendant from receiving a safety valve reduction.  Thus, the question on appeal in those cases was whether the district court erred in automatically precluding the defendants from the safety valve reduction.  That question differs from what we are considering here -- whether the application of the safety valve reduction in Anderson's case should have automatically precluded the application of the firearm enhancement.  However, the discussion of the differing burdens for the safety valve reduction and firearm enhancement provisions in those cases is helpful for our analysis.

analyzed analogously." Id. at 912. However, the Fifth Circuit's description of the government's burden under § 2D1.1(b)(1) differs from the analysis of that burden in our precedent. The Fifth Circuit states that "[t]he government has the burden of proof under § 2D1.1 of showing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Id. (internal quotation marks and citation omitted). By contrast, as explained above, we have held that the government must show that a firearm was present during the commission of an offense. The burden then shifts to the defendant to show that it is clearly improbable that the gun was used in connection with the offense. Because of these differing approaches, the Fifth Circuit's reasoning is inapplicable in this case. See Nelson, 222 F.3d at 550 n.3 (distinguishing Vasquez based on its different approach to the burden under § 2D1.1(b)(1)).

We thus discern no legal error in the district court's application of the firearm enhancement given its acceptance of the safety valve reduction. Nor were the district court's findings related to the firearm enhancement clearly erroneous. The defendant conceded that there was a loaded gun in the home in which he sold drugs. On that basis alone, the government met its burden of establishing that the gun was present at the commission of the offense. See McDonald, 121 F.3d at 10 ("[T]he prosecution need only prove that the defendant possessed the weapon during the

-10-

currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so.").  In his objection to the PSI and during sentencing, defense counsel argued only that Anderson bought the gun after a series of home invasions took place in his area.  This fact does not establish that a connection between the weapon and the crime is clearly improbable.  See United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992) ("[W]hen the weapon's location makes it readily available to protect either the participants themselves during the commission of illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct.").  Thus, we discern no error in the district court's application of the sentencing enhancement.[3]

---

[3] Anderson also appears to challenge the district court's application of the firearm sentencing enhancement under Booker. Specifically, he argues that his concession that he had a loaded gun in his home does not amount to proof beyond a reasonable doubt that the gun was used in connection with the offense.  This challenge is a non-starter.  Booker does not require the government, in an advisory guidelines system, to assume burdens that are allocated to the defendant under the guidelines, or change the applicable burden from preponderance of the evidence to proof beyond a reasonable doubt.  See United States v. Yeje-Cabrera, 430 F.3d 1, 17 (1st Cir. 2005) ("[T]he Booker error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system."(internal quotation marks omitted)); United States v. Pérez-Ruiz, 421 F.3d 11, 14-15 (1st Cir. 2005) ("Under the 5-4 constitutional ruling in Booker, judge-made enhancements under the guidelines that result in a sentence greater than the sentence that could be imposed based solely on the facts found by the jury do amount to Sixth Amendment violations if the guidelines are treated as mandatory; but under

## B. **Booker error**

The parties agree that Anderson preserved his Booker claim by raising a Blakely argument in the district court.[4] See United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005) ("The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional."). We thus review his preserved Booker claim for harmless error. United States v. Benedetti, 433 F.3d 111, 119 (1st Cir. 2005).

The government has the burden of establishing that the preserved Booker error was harmless. See United States v. Vázquez-Rivera, 407 F.3d 476, 489 (1st Cir. 2005). "The standard of proof, however, depends on whether the error is conceived of as constitutional." Id. If the error is constitutional in nature, "the government has the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights." Id. If the error is not constitutional in nature, the government

---

the companion 5-4 remedial ruling in Booker, this problem is washed out by treating the guidelines as advisory. A defendant sentenced under the mandatory regime may be entitled to re-sentencing under the advisory one . . . but Booker both created and cured the constitutional error at the same time.").

[4] Specifically, the government stated in its brief that, "[i]n this case, although Anderson's argument below is different from the one he makes on appeal, the record shows that the court and the parties were keenly aware of Booker's predecessor, Blakely v. Washington, 542 U.S. 296 (2004). As a result, the Government agrees that Anderson's appellate claim was preserved and will shoulder the burden of demonstrating that any error was harmless."

has the burden of demonstrating the absence of any "grave doubt" regarding the harmlessness of the error. See id. In the Booker context, we have explained that constitutional error exists "where a mandatory Guidelines sentence was imposed on the basis of judge-found facts," in violation of the Sixth Amendment. Id. We have not previously decided "whether Booker error arising out of the mandatory application of the Guidelines alone . . . is constitutional in nature." Id. at 490 n.7.

In this case, the government acknowledged that it has the difficult burden of proving harmless error, but it did not specify which specific standard is applicable. Because the government only had the burden at sentencing of establishing the presence of the gun for the firearm enhancement, and Anderson conceded that his gun was present in his home where the drug buys occurred, it is arguable that the Booker error in this case involves only the mandatory application of the guidelines. However, regardless of whether such an error is constitutional, we conclude that the government has not met its burden of proving harmless error. The government argues that "nothing in the record suggests that, given a chance to reflect again, the lower court would select anything other than the 57-month term it chose initially." To support this assertion, the government points to the judge's statements during sentencing that the crime "deserves the punishment that is being imposed," and that the sentence was "a legitimate and adequate

-13-

sentence." However, the government fails to account for the district court's consideration and discussion of Anderson's "serious mental health issues," presented in support of his request for a downward departure.

In addressing this request, the district court correctly noted that the guidelines discourage departures on the basis of mental health problems unless the facts take the case outside of the "heartland" of other cases involving defendants with mental health problems. See, e.g., United States v. Maldonado-Montalvo, 356 F.3d 65, 74 (1st Cir. 2003) (explaining that, under the guidelines, "departures based upon a defendant's mental condition are discouraged, which means that the sentencing court must first make a finding that the mental condition is extraordinary or atypical" (internal citations omitted)); United States v. Studley, 907 F.2d 254, 258 (1st Cir. 1990) ("[The guidelines] specifically state[] that defendant's mental or emotional conditions are not ordinarily relevant. If they are to be considered, the district court must expressly find that the defendant's particular mental or emotional condition is 'atypical.'" (emphasis omitted)). Our precedent has been "stringent in distinguishing between serious mental health problems and a truly 'extraordinary' case" under the guidelines. United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004); see also Maldonado-Montalvo, 356 F.3d at 74 (concluding that defendant's "severe or major depression" did not rise to the

level of "extraordinary" and thus did not warrant downward departure).

After carefully considering the facts presented on Anderson's mental health history, the court found that "[i]t's unfortunately the case that Mr. Anderson's condition is not outside the heartland" and that, although his condition was serious and severe, the court "see[s] a number of severe or serious mental health issues." This is a classic mandatory guidelines analysis.

Taking into account the heavy burden of the government to establish harmless error, we must question the government's assertion that the district court would not sentence Anderson more leniently in a post-Booker world. We have explained that, "under the advisory guidelines scheme set in place by Booker, a sentencing court will ordinarily begin by calculating the applicable guidelines range and then determine whether other factors 'warrant an ultimate sentence above or below the guideline range.'" United States v. Zapete-Garcia, 447 F.3d 57, 59 (1st Cir. 2006) (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006) (en banc)); see also United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006) ("[Post-Booker,] the guideline range, taking applicable departures into account, is the starting point for analysis but [] the proponent of a higher or lower sentence is free to adduce reasons and facts to support [a different sentence]."). Although rejecting Anderson's request for a downward departure

-15-

under the mandatory guidelines system, the district court acknowledged that it was "certainly clear that Mr. Anderson has severe mental health issues." Moreover, the district court sentenced him to the lowest end of the guidelines range. Given the burden on the government, we are not persuaded -- either as to the absence of a "grave doubt" or beyond a reasonable doubt -- that the district court would not have imposed a lower sentence in this case if the guidelines had been advisory rather than mandatory.

## III.

For the reasons explained above, we vacate the defendant's sentence and remand to the district court for re-sentencing. We express no view as to whether the district court should ultimately alter the sentence on remand.

So ordered.

-16-