# United States Court of Appeals
## For the First Circuit

No. 14-2297

UNITED STATES OF AMERICA,

Appellee,

v.

JOWENKY NUÑEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

William S. Maddox on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, District of
New Hampshire, and Emily Gray Rice, United States Attorney,
District of New Hampshire, on brief for appellee.

October 19, 2016

**SELYA**, **Circuit Judge**. Defendant-appellant Jowenky Nuñez challenges the sentence imposed following his guilty plea to a charge of conspiracy to possess with intent to distribute 28 grams or more of cocaine base (crack cocaine). See 21 U.S.C. §§ 841(a)(1), 846. He raises three discrete claims of error, implicating a sentencing enhancement for his leadership role in the offense, a sentencing enhancement for his possession of a firearm during and in furtherance of a drug-trafficking crime, and the substantive reasonableness of his sentence. Finding these claims of error unpersuasive, we affirm.

## I. BACKGROUND

As this appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the plea agreement, the uncontested portions of the second revised presentence investigation report (PSI Report), and the transcript of the two-day disposition hearing. See United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014).

The appellant was arrested on February 2, 2012, and charged with conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base, as well as possession of a firearm in furtherance of a drug-trafficking offense. These charges arose out of a long and thorough investigation, spearheaded by the Drug Enforcement Administration, into drug-trafficking activities in Bangor, Maine. The appellant originally maintained

- 2 -

his innocence but — on January 18, 2013 — he pleaded guilty to the conspiracy charge.[1]

At a disposition hearing spread over two separate days, the appellant identified three purported inaccuracies in the PSI Report. First, he contested the finding that he served as a manager of the enterprise and, consequently, he objected to the proposed aggravating role enhancement. Second, he contested the finding that he carried a firearm with him to make drug deliveries and, consequently, objected to the proposed two-level enhancement for possession of a firearm in the course of the crime of conviction. Third, he contested the accuracy of the PSI Report's drug-quantity calculation.

The district court acknowledged and discussed each objection. In rejecting the appellant's first objection, the court reviewed testimony from several coconspirators and pointed specifically to uncontradicted testimony from Dawlin Cabrera (the ringleader of the conspiracy) to the effect that the appellant was the person who kept him updated on sales and receipts.

Turning to the weapons enhancement, the court agreed with the appellant that the government had not sufficiently tied the gun mentioned in the PSI Report to the appellant and the crime of conviction. However, the court accepted the government's

---

[1] Pursuant to the plea agreement, the firearms charge was dismissed at the time of sentencing.

proffer of the appellant's own testimony during a coconspirator's trial, indicating that he (the appellant) possessed a different gun while conducting the conspiracy's business. This newly introduced evidence, the court concluded, justified the weapons enhancement.

The appellant enjoyed more success with his final plaint. The district court accepted his (somewhat reduced) drug-quantity calculation.

When all was said and done, the court set the appellant's base offense level at 32, see USSG §2D1.1(c)(4); applied the two-level weapons enhancement, see id. §2D1.1(b)(1); applied the three-level role-in-the-offense enhancement, see id. §3B1.1(b); and subtracted three levels for acceptance of responsibility, see id. §3E1.1. These findings yielded a total offense level of 34. The appellant's past record placed him in Criminal History Category (CHC) III. As a result, the appellant's guideline sentencing range (GSR) was 188 to 235 months.

Taking into account the appellant's substantial assistance to the government and the government's corresponding recommendation of a below-the-range 120-month sentence, the court departed downward, see id. §5K1.1, and imposed a 97-month incarcerative sentence. In formulating this term of immurement, the court noted its consideration of the appellant's criminal history, character, and the nature and circumstances of the

conspiracy.  The court also noted the appellant's specific role in the offense, the need to protect the public, and its desire to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553(a).

This timely appeal ensued.[2]

## II.  ANALYSIS

Appellate review of federal criminal sentences is for abuse of discretion.  See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). The process is bifurcated.  A reviewing court must first determine whether the sentence imposed is procedurally reasonable (that is, free from non-harmless procedural error) and then must determine whether it is substantively reasonable.  See Gall, 552 U.S. at 51.

It follows that "[t]he touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011).  That review "is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).  Within this framework, we review a district court's factual findings for clear error, and its

---

[2] Although the appellant was indicted, convicted, and sentenced in the District of Maine, the government is represented on appeal — as it was below — by prosecutors from the District of New Hampshire.  The reason for this odd configuration need not concern us.

interpretation and application of the guidelines de novo.  See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).

"Reasonableness is itself an inherently fluid concept." United States v. Bermúdez-Meléndez, 827 F.3d 160, 166 (1st Cir. 2016).  There is not a single reasonable sentence "but, rather, a universe of reasonable sentencing outcomes."  United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011).

The federal sentencing guidelines are merely advisory. See United States v. Booker, 543 U.S. 220, 245 (2005).  Still, the GSR remains the conventional starting point for constructing a federal sentence.  See Martin, 520 F.3d at 91.  The sentencing court is obliged to calculate the GSR correctly, and a party may challenge an incorrect calculation even where, as here, the court levies a sentence below the bottom of the range.  See United States v. Gobbi, 471 F.3d 302, 313 n.7 (1st Cir. 2006).

With these principles in mind, we turn first to the appellant's claim that the sentencing court erred when it applied a three-level enhancement for his leadership role in the conspiracy.  See USSG §3B1.1(b).  Such an enhancement requires dual findings.  First, the court must find that the underlying criminal activity involved five or more participants or was otherwise extensive.  See id.  Second, the court must find that the defendant, when committing the offense, managed, superintended, or exercised hegemony over at least one other

- 6 -

participant. See, e.g., United States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996). In this instance, the appellant does not contest that the conspiracy involved five or more participants; instead, he claims that he simply followed orders and attacks the district court's finding that he exercised managerial responsibilities with respect to other participants in the enterprise.

This attack is easily repulsed. It ignores the testimony of several coconspirators, which confirmed the appellant's exercise of operating control over various individuals at different times during the life of the conspiracy. For example, Cabrera testified to the effect that the appellant was responsible for keeping him updated on the financial aspects of the conspiracy; Alfarabick Mally testified that the appellant was "in charge when Cabrera was not in Bangor"; Robert Jordan testified that the appellant was known as "the General" and was the drug ring's de facto "head of operations"; and Keith Bo Lewis testified that the appellant was "in charge of the crew."

Criminal cabals do not normally have formal organizational charts, and a finding of managerial control can supportably be premised on how the enterprise operated in practice. See United States v. Cruz, 120 F.3d 1, 3-4 (1st Cir. 1997) (en banc). Here, the record is replete with evidence that, either directly or by fair inference, solidly supports the district court's conclusion that the appellant was not "out on the street"

but, instead, was responsible for overseeing retail sellers and trusted by Cabrera to exert control over other players in the enterprise. No more was exigible to ground the role-in-the-offense enhancement. See United States v. Cruz-Rodríguez, 541 F.3d 19, 33 (1st Cir. 2008); see also United States v. Savoie, 985 F.2d 612, 616 (1st Cir. 1993) (recognizing that a defendant need not be the head of a conspiracy in order to warrant managerial role-in-the-offense enhancement).

Next, the appellant argues that the district court committed clear error in imposing the two-level weapons enhancement. The applicable sentencing guideline authorizes such an enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the course of a drug-trafficking crime. USSG §2D1.1(b)(1). The government has the initial burden of establishing that the defendant possessed a weapon during the commission of the offense. See United States v. Anderson, 452 F.3d 87, 90 (1st Cir. 2006). Once that burden has been satisfied, the enhancement attaches unless the defendant can show that it was clearly improbable that the weapon was connected to the crime. See USSG §2D1.1, cmt. n.11; see also Gobbi, 471 F.3d at 313.

Here, the appellant is aiming at the wrong target. His argument focuses on a firearm purchased around August of 2011 by a coconspirator, Jennifer Holmes. But though the government initially sought the weapons enhancement based on this firearm,

the district court rejected the government's proffer.  The Holmes firearm is, therefore, irrelevant to the enhancement actually imposed.

The district court predicated the weapons enhancement on a different firearm: a firearm owned by yet another coconspirator, Eddie Cogswell.  The court cited the appellant's own testimony (in a different case), in which he admitted that he had carried the Cogswell firearm at the place where the conspiracy's inventory of drugs was stashed.[3]  The appellant's brief on appeal offers no exculpatory explanation for this testimony.

Accepting the excerpt from the appellant's testimony, the district court found that the appellant possessed the Cogswell firearm on the premises where the conspiracy's stash of crack cocaine was stored and, thus, used the firearm in the course of the conspiracy.  To buttress this finding, the court recounted the testimony of two other coconspirators, Keith Bo Lewis and Alfarabick Mally.  In the court's words, the evidence "put a gun in [the appellant's] hand at the house where there was truly an enormous amount of crack cocaine."

---

[3] When confronted with the Cogswell firearm at the earlier trial, the appellant testified: "I know that gun.  That gun's always been in the house. . . . and I've had it in my hand."  The appellant added that he knew the weapon "[b]ecause I've had that gun for a long time.  I've always had it there [at the stash house]. . . . I've always carried it there." The clear implication of this testimony, unrebutted by the record, is that the firearm was kept at the stash house to safeguard the drug inventory.

We have held that, absent some innocent explanation, mere possession of a firearm during and in the course of a drug-trafficking conspiracy may justify a weapons enhancement. See United States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990); see also USSG §2D1.1(b)(1). Where, as here, the appellant has neither articulated an innocent explanation for his possession of the gun nor identified any evidence indicating the improbability of a link between the gun and the crime of conviction, evidence of possession at the stash house was all that was required. See Gobbi, 471 F.3d at 313. Thus, we discern no error — clear or otherwise — in the district court's imposition of the enhancement.

Before leaving the weapons enhancement, a further comment is in order. In resisting this enhancement, the appellant dwells at some length on his putative withdrawal from the conspiracy. His argument, however, is directed at the facts surrounding his use of the Holmes weapon: the incidents involving the Cogswell weapon occurred before the appellant's putative withdrawal from the conspiracy. Consequently, we need not address the withdrawal question.[4]

---

[4] In a single sentence in his brief, the appellant suggests that his putative withdrawal from the conspiracy may have affected the district court's drug-quantity calculation. Any such suggestion is doubly defaulted. For one thing, the district court used the very drug-quantity calculation proposed at sentencing by the appellant, and the appellant is bound by that calculation. See United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001). For another thing, the appellant's brief is bereft of developed

The appellant's challenge to the substantive reasonableness of his sentence need not detain us. Since the appellant did not advance this claim of error below, there is some question as to whether our review is for abuse of discretion or for plain error. See United States v. Ruiz-Huertas, 792 F.3d 223, 228 & n.4 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015). Here, however, we need not answer this question: assuming, favorably to the appellant, that our review is for abuse of discretion, the claim of error nonetheless fails.

A substantively reasonable sentence ought to reflect both a plausible sentencing rationale and a defensible result. See Martin, 520 F.3d at 96. That benchmark was achieved in this instance.

The district court's sentencing rationale was perfectly plausible. The court carefully considered the sentencing factors identified by Congress. See 18 U.S.C. § 3553(a); Martin, 520 F.3d at 92. In particular, it stressed the pivotal role that the appellant played in saturating the Bangor area with a flood of crack cocaine. These activities, in the court's view, were

argumentation concerning any drug-quantity issue and, thus, any such claim of error has been abandoned. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (recognizing that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work").

- 11 -

directly correlated with the extreme wreckage left behind in the community.  See Flores-Machicote, 706 F.3d at 22-23.

The court also considered the appellant's personal characteristics.  In particular, the court noted that the appellant was not himself a crack cocaine user and that his involvement in the drug-trafficking enterprise was motivated purely by greed, not by his own addiction.  See United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007).

So, too, the sentence imposed was plainly within the universe of reasonable sentences.  To begin, the sentence fell substantially below the nadir of the GSR.  As we have explained, "[i]t is a rare below-the-range sentence that will prove vulnerable to a defendant's claim of substantive unreasonableness."  United States v. King, 741 F.3d 305, 310 (1st Cir. 2014).  This is not so rare a case.

The appellant's rejoinder is that his sentence was disproportionate to the sentence imposed on Cabrera (the ringleader of the conspiracy).  Cabrera initially received a 120-month sentence, which — as predicted by the district court — was shortened to 97 months following palliative amendments to USSG §2D1.1(c).

This amounts to a claim of sentencing disparity, which we approach mindful that a salient consideration in the fashioning of a criminal sentence is to "avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The appellant cannot pass through this screen. Merely pointing to a coconspirator's sentence, without more, does not prove the existence of an impermissible sentencing disparity. See United States v. Rivera-López, 736 F.3d 633, 636 (1st Cir. 2013); United States v. Dávila-González, 595 F.3d 42, 50 (1st Cir. 2010). After all, "a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." United States v. Gomez-Pabon, 911 F.2d 847, 862 (1st Cir. 1990).

In all events, the appellant's proposed comparator did not receive a lighter sentence. And even though Cabrera occupied a higher place in the hierarchy of the conspiracy, there was an offsetting circumstance: the appellant (who was in CHC III) had a significant record of past criminality, whereas Cabrera (who was in CHC I) did not. In short, the appellant is comparing plums to pomegranates: there is a salient distinction between the appellant and his proposed comparator, and that distinction — the appellant's more extensive criminal record — defeats any claim that the two individuals were similarly situated. See Flores-Machicote, 706 F.3d at 24-25.

That ends this aspect of the matter. We conclude, without serious question, that the appellant's below-the-range sentence was substantively reasonable.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed.**