# United States Court of Appeals
## For the First Circuit

No. 22-1367

UNITED STATES OF AMERICA,

Appellee,

v.

DEREK FITZPATRICK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Montecalvo, Circuit Judges.

Hunter J. Tzovarras on brief for appellant.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

May 17, 2023

**SELYA**, **Circuit Judge**. Drugs and guns are a bad combination, and the district court refused to extend safety valve relief to defendant-appellant Derek Fitzpatrick after finding that he possessed a firearm during and in connection with a drug-trafficking crime. See USSG §5C1.2(a)(2). The appellant appeals, insisting that this finding is not supported by the record. After careful consideration of the parties' arguments, we affirm both the challenged finding and the ensuing sentence.

## I

We briefly rehearse the facts and travel of the case. Because this appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In August of 2018, the Maine Drug Enforcement Agency (MDEA) began investigating a suspected drug-trafficking operation in Aroostook County, Maine. As part of its probe, the MDEA enlisted a confidential informant (CI) to conduct controlled buys of methamphetamine from the appellant. Although the CI made several purchases of methamphetamine from the appellant in late August, this appeal centers on a specific transaction that occurred in early September and the execution of two search warrants a few weeks later.

- 2 -

The pivotal transaction took place on September 11. The CI arranged to purchase drugs from the appellant in Littleton, Maine, on that date. According to the CI's written statement (executed that same day), the CI rendezvoused with the appellant at a garage in Littleton. When the two met, the appellant was "in a dark [b]lue or possibly [g]rey GMC pickup in the lawn next to [the garage]." The CI proceeded to buy 111.5 grams of methamphetamine and then broached the subject of purchasing another half-pound of methamphetamine at a later date. During the course of the transaction, the CI "noticed a hand gun in the door pocket of the pickup."

The appellant challenges certain aspects of this account. He asserts, for example, that the transaction occurred inside the garage (as opposed to outside of it). He also asserts that there was a white GMC pickup parked outside the garage (not a blue or grey one).[1] And, finally, he asserts that there were no firearms in his truck.

On September 28, the MDEA executed search warrants for both the appellant's residence in Houlton, Maine, and the garage in Littleton. Agents recovered 1,992 grams of methamphetamine hydrochloride from the residence and 20.28 grams of

---

[1] It is undisputed that the appellant owned two GMC pickup trucks, one white and another variously described as "dark blue," "grey," "green," or "slate."

methamphetamine hydrochloride from the appellant's "slate colored GMC pickup truck," which was parked at the Littleton garage. In that truck, the agents also found a loaded handgun in the "driver's side door pocket," another handgun in the center console, $2,050 in cash, and sundry drug paraphernalia.

We fast-forward to June 12, 2019. On that date, a federal grand jury sitting in the District of Maine returned an indictment, which charged the appellant with two counts of distributing methamphetamine (counts one and two), one count of distributing fifty grams or more of controlled substances (count three), and one count of possessing five hundred grams or more of controlled substances with intent to distribute (count four). See 21 U.S.C. § 841(a)(1). Although the appellant initially maintained his innocence, he subsequently entered guilty pleas to all four counts.

The probation office prepared a PSI report that grouped all four counts, see USSG §3D1.2(d), and — after accounting for the quantities of methamphetamine actually transferred and seized, a future transaction planned with the CI, and various cash-to-drug conversions — attributed 3.4 kilograms of methamphetamine to the appellant. This produced a base offense level of thirty-two. See id. §2D1.1(c)(4). After adjusting for a two-level increase for possession of a firearm, see id. §2D1.1(b)(1), and a three-level decrease for acceptance of responsibility, see id. §3E1.1, the

- 4 -

amended PSI Report settled on a total offense level of thirty-one. Coupled with the appellant's placement in criminal history category I, the total offense level yielded a guideline sentencing range (GSR) of 108 to 135 months. But because count four carried a ten-year mandatory minimum sentence, see 21 U.S.C. § 841(b)(1)(A)(viii), the appellant's GSR was set at 120 to 135 months.

At the disposition hearing, the appellant sought to be relieved of the mandatory minimum sentence. He argued that he qualified for relief under the "safety valve" provision. See 18 U.S.C. § 3553(f); USSG §5C1.2(a). As relevant here, the safety valve affords relief from certain mandatory minimum sentences to first-time drug-trafficking offenders. See United States v. McLean, 409 F.3d 492, 500 (1st Cir. 2005). To qualify for such relief, a defendant must show, by a preponderance of the evidence, that he meets five conditions. See 18 U.S.C. § 3553(f)(1)-(5); USSG §5C1.2(a)(1)-(5); see also United States v. Anderson, 452 F.3d 87, 90 (1st Cir. 2006). Although the appellant contended that he satisfied all five conditions, the parties' arguments at sentencing focused primarily on a single condition,[2] which turned

_____

[2] At the disposition hearing, the government also argued that the appellant failed to fulfill another condition of the safety valve provision: that he had "truthfully provided to the Government all information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5). The district court saw no need to reach this issue, nor do we.

on whether or not the appellant had "possess[ed] a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); see USSG §5C1.2(a)(2).

The appellant contended that he had not possessed a firearm in connection with the offense. First, he claimed that the CI's statements regarding the presence of a handgun in his truck during the September 11 transaction were inaccurate. In support, he proffered an affidavit stating that the transaction occurred inside the garage; that his white truck, rather than his blue or grey truck, was parked outside during the transaction; and that, in all events, the truck did not contain a firearm at the time. Second, he claimed that — even if the court accepted the CI's version of the facts — he had carried his burden of showing that the firearm in his truck was not possessed in connection with the September 11 drug-trafficking transaction. Relatedly, he claimed that the firearms found in his truck on September 28 were not possessed in connection with the large quantity of methamphetamine found at his residence on the same date.

The government demurred. It argued that a handgun was present during the September 11 transaction and that the appellant had not carried his burden of showing that the handgun was not possessed in connection with the transaction. The government pointed to the CI's statement concerning the September 11 transaction and to evidence discovered during the execution of the

search warrants. The government argued that the presence and visibility of the handgun during the September 11 transaction gave rise to the reasonable inference that the handgun played a role in protecting the appellant's person, drugs, and money. It also argued that the agents' discovery of the handgun on September 28 corroborated the CI's earlier account.

The district court credited the CI's statement and found that a firearm had been in the appellant's truck on September 11. The court reasoned that "[t]here's nothing . . . which would substantially undermine . . . the accuracy of that statement by [the CI] to establish the presence of a firearm on September 11, 2018, during the course of a drug transaction." The court went on to find that the appellant's possession of the firearm in the truck during the transaction indicated that he possessed the weapon "in connection with the [drug] offense." 18 U.S.C. § 3553(f)(2); see USSG §5C1.2(a)(2). Consequently, the court ruled that the appellant did not qualify for safety valve relief.

When all was said and done, the district court sentenced the appellant to a 120-month term of immurement. This timely appeal followed.

**II**

The appellant argues that the district court erred in finding him ineligible for safety valve relief. When assessing "a sentencing court's determination that a defendant failed to

qualify for the safety valve, the standard of appellate review varies according to the foundation upon which that determination is based." United States v. Matos, 328 F.3d 34, 38 (1st Cir. 2003). To the extent that the determination is based on conclusions of law, our review is de novo. See id. When, however, that determination hinges on the district court's factual findings, our review is for clear error. See id.

To qualify for safety valve relief, a defendant bears the burden of satisfying five statutory requirements by a preponderance of the evidence. See United States v. Stark, 499 F.3d 72, 80 (1st Cir. 2007). He must show that he is free from certain combinations of criminal history points, that he neither used violence nor possessed a firearm in connection with the offense of conviction, that the offense resulted in neither death nor serious bodily injury, that he did not act in a managerial role in a related conspiracy, and that he truthfully cooperated with the authorities. See 18 U.S.C. § 3553(f)(1)-(5); USSG §5C1.2(a)(1)-(5). Only the second requirement is at issue here: to be eligible for safety valve relief, the defendant needed to show that he did not "possess a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); see USSG §5C1.2(a)(2).

In determining that the appellant failed to satisfy this requirement, the district court made two pertinent findings. First, it found that the appellant had possessed a firearm when he

- 8 -

sold drugs to the CI on September 11. Second, it found that the appellant's possession of the firearm was in connection with that drug sale. The appellant challenges both findings, and we address these imbricated challenges sequentially.

## A

We begin with the appellant's claim that the district court erred in finding that there was a handgun in his truck during the September 11 transaction. In the appellant's view, this finding resulted from the court's improper crediting of the CI's statement. Because this challenge is factbound, our review is for clear error. See Matos, 328 F.3d at 38.

From an appellant's coign of vantage, clear error is an inhospitable standard of review. "Clear error will be found only when, upon whole-record-review, an inquiring court 'form[s] a strong, unyielding belief that a mistake has been made.'" United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (alteration in original) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).

We do not discern clear error here. The record contains evidence from which the district court could reasonably have concluded that there was a firearm in the appellant's truck during the September 11 drug transaction. In a near-contemporaneous account of the sale, the CI reported that he had "noticed a hand gun in the door pocket of the pickup" during the transaction. The

- 9 -

"specificity and detail" of the CI's account, coupled with the fact that the CI was relaying a "first-hand description" of the location of the weapon, are factors that support the veracity of the information conveyed. United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (emphasis omitted); see United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011). This inference of reliability is further buttressed by the fact that the CI had proven to be reliable in connection with the August transactions. We have long held that a confidential informant's history of providing accurate information lends an "indicium of reliability" to that informant's later report. United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996). And, finally, the district court did not spy anything in the record that would substantially undermine the CI's report.

The court's decision to give greater credence to the CI's report than to the appellant's account is the type of determination that is "peculiarly within the province of the district court and will rarely be disturbed on appeal." United States v. Quirion, 714 F.3d 77, 81 (1st Cir. 2013); see United States v. Platte, 577 F.3d 387, 392-93 (1st Cir. 2009) ("[C]redibility determinations are part of the sentencing court's basic armamentarium."). Given that the record, viewed as a whole, does not impugn the district court's factual finding, that finding was not clearly erroneous.

The appellant's arguments to the contrary are unconvincing. Principally, he argues that the district court's finding should be set aside because it is contradicted by his own version of the facts. This argument, though, runs headlong into the well-established principle that "when two or more legitimate interpretations of the evidence exist, the factfinder's choice between them cannot be deemed clearly erroneous." United States v. Espinoza, 490 F.3d 41, 46 (1st Cir. 2007).

The appellant also argues that the CI's account "lacked indicia of reliability." But this is whistling past the graveyard: the CI's near-contemporaneous account of the September 11 transaction specifically noted the presence of a firearm in the "door pocket" of the appellant's "dark [b]lue or possibly [g]rey GMC pickup." See Schaefer, 87 F.3d at 566; Taylor, 985 F.2d at 6. When officers searched that same truck — less than three weeks later — they discovered a firearm in that precise location. This later discovery tended to corroborate the CI's earlier statement. Cf. United States v. Mena, 933 F.2d 19, 25 n.5 (1st Cir. 1991) (explaining that "events that occur after an offense has been perpetrated may be relevant in an assessment of what transpired at the earlier time").

In his reply brief, the appellant argues (for the first time) that the district court erred by failing to consider the sworn declaration that he filed in connection with his sentencing

memorandum. But arguments made for the first time in an appellant's reply brief are generally deemed waived, see United States v. Franklin, 51 F.4th 391, 401 n.6 (1st Cir. 2022), and so it is here. We add that even if not waived, the appellant's argument would not gain him any traction: the declaration was part of the record before the district court at sentencing and was specifically referenced by the government during the disposition hearing. There is nothing in the record to suggest that the district court failed to consider the appellant's declaration; the more logical inference is that the court considered the declaration but simply found it less persuasive than other record evidence. See United States v. Rodríguez-Rosado, 909 F.3d 472, 480-81 (1st Cir. 2018).

That ends this aspect of the matter. We hold that the district court did not clearly err in finding that there was a firearm in the appellant's truck during the September 11 drug sale.

**B**

The appellant's second claim of error is that the district court blundered in finding that he possessed a firearm "in connection with the offense." 18 U.S.C. § 3553(f)(2); see USSG §5C1.2(a)(2). He argues that, even if there was a firearm in his truck on September 11, the firearm was not used in connection with the drug deal that occurred on that date because it was "not intended to facilitate the transaction." Separately, he argues

that he did not possess a firearm in connection with the drugs seized on September 28.

Broadly speaking, "a defendant possesses a firearm in connection with a drug offense if the firearm has the potential to facilitate the offense." United States v. Leanos, 827 F.3d 1167, 1170 (8th Cir. 2016). Courts construing the safety valve provision have held that a firearm may be said to facilitate a drug offense if, among other things, it "embolden[s] an actor who had the ability to display or discharge the weapon" or "serv[es] as an integral part of a drug transaction." United States v. Carillo-Ayala, 713 F.3d 82, 96 (11th Cir. 2013). In addition, a firearm may be found to have been possessed in connection with a drug offense if the firearm was located in a place "where it could be used to protect drugs." Leanos, 827 F.3d at 1170 (quoting United States v. Jackson, 552 F.3d 908, 910 (8th Cir. 2009) (per curiam)). Thus, the presence of a firearm in a location where a drug transaction is found to have transpired, without more, may give rise to an inference that the firearm was possessed in connection with a drug offense. See United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992). This principle has special bite when a firearm is located somewhere that "makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business." Id.; see United States v. Manigan, 592 F.3d 621, 629

(4th Cir. 2010) (collecting cases); United States v. Correy, 570 F.3d 373, 390 (1st Cir. 2009).

Viewed in this light, the appellant's contention that the district court clearly erred in finding that the firearm in his truck on September 11 was possessed in connection with his drug offense is dead on arrival. The record contains evidence from which the district court supportably could find — as it did — that when the CI arrived at the garage, the appellant was in his truck and a handgun was inside the truck with him. What is more, the CI's written statement makes pellucid that the CI could see the weapon while he and the appellant were consummating the drug transaction. This close proximity strongly suggests that the firearm was "readily available" to protect the appellant and/or his contraband during the exchange. Corcimiglia, 967 F.2d at 726-27 (holding that firearms stored in closet of home where drug distribution occurred, paired with knowledge of their location, rendered firearms "readily available"). No more was exigible to ground the district court's determination that the firearm was possessed in connection with the drug offense. See United States v. Carrasquillo, 4 F.4th 1265, 1270, 1273-74 (11th Cir. 2021) (holding that firearm was possessed in connection with offense when firearm was stored in center console of truck in which defendant intended to transport drugs); United States v. Hargrove, 911 F.3d 1306, 1325, 1331 (10th Cir. 2019) (explaining that safety

- 14 -

valve relief was unavailable when firearms were found in truck with narcotics and could have facilitated drug trafficking, "even if the firearms did not do so directly").

To be sure, the appellant's possession of a firearm in connection with the September 11 drug sale is most directly tied to the conduct underlying count three. It is count four, however, that carried the mandatory minimum sentence. Under the sentencing guidelines, though, a firearm can be possessed "in connection with the offense," USSG §5C1.2(a)(2), so as to foreclose the availability of the safety valve even if the weapon was not possessed during the commission of the specific transaction that underlies the count that carried the mandatory minimum sentence, see United States v. Wilson, 106 F.3d 1140, 1145 (3d Cir. 1997) (holding that possession of firearm during uncharged prior drug transactions precluded safety valve relief). This result inures because the guidelines define "offense" to include both the "offense of conviction and all relevant conduct." USSG §5C1.2, cmt. n.3; see United States v. Martinez, 9 F.4th 24, 38 (1st Cir. 2021); see also United States v. Pennue, 770 F.3d 985, 992 (1st Cir. 2014) (explaining that where multiple counts are subject to grouping for sentencing purposes, "relevant conduct" includes acts or omissions that were "part of the same 'course of conduct or common scheme or plan as the offense of conviction'" (quoting USSG §1B1.3(a)(2))). In this case, the appellant has never denied that

the September 11 transaction was relevant conduct in relation to his conviction for the separate count of possessing a much larger amount of methamphetamine on September 28. And given that he bore the burden of demonstrating his eligibility for safety valve relief, see Anderson, 452 F.3d at 90, this tacit admission is fatal.

We summarize succinctly. We uphold the district court's finding that the appellant possessed a firearm in connection with his drug offense and, thus, was ineligible for safety valve relief.

**III**

We need go no further.[3] For the reasons elucidated above, the challenged sentence is

**Affirmed**.

---

[3] Because we hold that the appellant possessed a firearm during the September 11 transaction, we need not reach the appellant's argument that he did not possess a firearm in connection with the drugs seized on September 28.